**PHILLIPS PETROLEUM CO. v. NATIONAL LABOR RELATIONS BOARD.**

No. 14248.

United States Court of Appeals
Fifth Circuit.

Aug. 6, 1953.

Rehearing Denied Sept. 30, 1953.

Edgar Waite Clark, Bartlesville, Okl., S. E. Floren, Jr., Muskogee, Okl., Rayburn L. Foster and Harry D. Turner, Bartlesville, Okl., for petitioner.

Robert T. McKinlay, Atty., A. Norman Somers, Asst. Gen. Counsel, and David P. Findling, Associate Gen. Counsel, Washington, D. C., George J. Bott, Gen. Counsel, Frederick U. Reel, Ruth C. Goldman, Attys., N.L.R.B., Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

In this proceeding Phillips Petroleum Company petitions this court[1] to review and set aside an order of the National Labor Relations Board finding that it had committed an unfair labor practice[2] by refusing upon request to bargain collectively with International Union of Operating Engineers, A. F. of L., hereafter referred to as the union, after it had been certified by the Board as the bargaining representative of what the Board determined was an appropriate unit of Phillips employees. In its answer, the Board prays that its order[3] be enforced. The only issue in the case, however, concerns the challenge to the Board's former decision and direction of election in the representation proceeding.[4] Phillips concededly refused to bargain with the union as a representative of all employees within the unit thus designated by the Board and suffered the finding of the unfair labor practice as was necessary in order to challenge the antecedent action of the Board in designating the bargaining unit.[5]

Specifically the issue is whether the Board could properly determine that fifteen of Phillips' employees who are engaged in operation and maintenance work at the Phillips Apartment Hotel in Bartlesville, Oklahoma, should be included in the bargaining unit along with the operation and maintenance personnel of Phillips who worked in eleven other buildings in Bartlesville, which Phillips either owns or leases and which are occupied in carrying on its interstate petroleum industry activities. This finding of the Board was made in its consideration of a representation proceeding which was instituted by petition of the union claiming to be the bargaining representative of approximately two hundred employees "engaged in * * * operation and maintenance work under the Building Division of the Treasury Department of the Phillips Petroleum Company at Bartlesville, Oklahoma * * *." Following an election within the unit in which the union received 134 to 59 majority of the ballots cast, the Board certified the union as the exclusive bargaining representative of the employees in the unit.

The cleaning and maintenance of all of the buildings occupied by Phillips at Bartlesville,[6] whether owned or leased, are under supervision of what is designated as the Building Division of Phillips Treasury Department which is headed by Building Division Manager, P. S. Benz.[7] The hotel

1. Phillips is a Delaware corporation authorized to do business in Texas and having its principal office in Bartlesville, Oklahoma. The alleged unfair labor practice in question occurred in Oklahoma, but since Phillips is doing business in Texas, it is conceded that this court has jurisdiction in this proceeding. 29 U.S. C.A. § 160(f); Olin Industries v. N. L. R. B., 5 Cir., 191 F.2d 613.

2. §§ 8(a) (1) (5) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1) (5).

3. Reported in 100 N.L.R.B. 120.

4. 97 N.L.R.B. 67.

5. Pittsburgh Glass Co. v. N. L. R. B., 313 U.S. 146, 61 S.Ct. 908, 85 L.Ed. 1251; A. F. of L. v. N. L. R. B., 308 U.S. 401, 60 S.Ct. 300, 84 L.Ed. 347.

6. Except as to the hotel, there is no dispute that these buildings are used by Phillips in the operation of its petroleum business.

7. The work of this division is supervised by the following personnel: maintenance superintendent, operations superintendent, cleaning supervisor, warehouse foreman, electric supervisor, office manager, hotel manager and personnel director. These supervisors are responsible to manager Benz.

has its own manager who exercises his own judgment in administrative matters in the day to day operation of the hotel, although he is under the general supervision of the Division Manager. The hotel manager can hire replacements of hotel employees, but authorizations to hire additional members to the staff of the hotel must come from Division Manager Benz. The clerical work in connection with the hiring of hotel employees is performed by the Building Division personnel. Employee transfers from the hotel to other parts of the Building Division must be passed upon by the Building Division Manager, as well as by the hotel manager. From time to time since the apartment hotel has been in operation employees from various sections or departments of the Building Division have been sent to the apartment hotel to perform specified operational or maintenance tasks under the supervision of their regular foreman. While they were so engaged their time was charged to the apartment hotel for accounting purposes, but they were paid their regular salaries through their respective departments. When exceptional maintenance problems are encountered by the hotel manager he calls upon Benz to furnish the necessary personnel. Upon such occasions Benz will either send employees from the Building Division to assist in the matter or secure the services of an independent contractor.

There are approximately 310 employees in the Building Division, 35 of whom are employed in the apartment hotel, and 15 of these were classified as operation and maintenance employees and were included in the bargaining unit. All of these employees have the same retirement plan, insurance benefits, transfer preferences, and certain other benefits offered by Phillips. With the approval of appropriate company officials, employees may be transferred between the apartment hotel and the other branches of the Building Division. When such a transfer is made the employee retains his seniority, which, as is true with all of Phillips' employees, dates from the time of the original employment and not from the time of the transfer from another branch or department. The record shows several instances of the transfer of maids from the hotel to work of the same type at the office building and their return to the hotel on emergency occasions. Maintenance employees from other parts of the Building Division are likewise sent to the hotel in an emergency and, on one occasion, some of the night cleaning crews from the office building were sent to the hotel. Other instances were shown which disclosed that employees in the various branches of the Building Division could be quickly shifted to and from each other's jobs.

Petitioner contends here, as it did before the Board in the representation proceeding and the unfair labor practice proceeding, that the activities of the maintenance and operation employees at the hotel are not in, nor do they affect, commerce within the terms of the statute and are therefore beyond the jurisdiction of the Board; that in any event, since the Board has refused jurisdiction of such employees in the hotel industry in general, the adoption of different standards for application in this case is arbitrary; and finally, that the Board acted contrary to the Act and abused its discretion in including the Phillips Apartment Hotel employees in the bargaining unit of the company's office, shop and laboratory employees because the record does not support the appropriateness of the hotel-oil company unit. In support of these three propositions, counsel earnestly urge that the finding which the Board made that the hotel housing accommodations were supplied by the employer for the "prime purpose of satisfying housing needs for employees or guests of the company" and "is an integral part of Employer's operations at the Bartlesville location" is wholly unsupported by the evidence and contrary to the facts of the case. It is contended that the hotel is a business unit separate and independent from the activities of Phillips and that the hotel operation conforms strictly to the pattern of the hotel industry generally. It is said that ownership of a local concern by an employer engaged in interstate commerce can not have more than a remote, speculative, and, in this case, trifling, effect on interstate commerce. Strongly relying upon its contention that the Phillips Apart-

ment Hotel is being managed in the same manner as hotels generally, and the Board's own interpretation of Congressional intent that hotels were never intended to be covered by the Labor Act,[8] it is strenuously insisted that the Board's order should be set aside as to the hotel employees for lack of affect on interstate commerce to sustain jurisdiction. It is further contended that not only did the Board have no jurisdiction, but it acted arbitrarily in asserting the jurisdiction it claimed to exist, because while as to other hotels it continues to adhere to its established policy of not asserting jurisdiction it departs from it in the case of petitioner where conditions are no different and that this is arbitrary and capricious administrative action, a denial of due process of law. Finally, it is claimed that in determining an appropriate unit for collective bargaining the Board, despite its conceded discretion in such matters, clearly erred when exercising its determination on the basis of a subdivision of the employer unit in including separate operations in two different industries, in this case composing the unit of employees of the hotel and of oil company building when, contrary to the finding of the Board, the evidence shows that the hotel employees and the employees in the petroleum business office, shop and laboratory in Bartlesville, did not share common interests and working conditions. Our attention is directed to specific details of the evidence which are said to establish this contention and refute the conclusion of the Board that no appreciable difference exists between the interests and working conditions of the two groups. In reply, counsel for the Board, stating the question in the case to be whether the determination of the Board was arbitrary and capricious, urges upon us that in determining that all of petitioner's operation and maintenance personnel constitute a single appropriate bargaining unit the Board only adopted the identical division which the petitioner itself has recognized in including all of these employees in a single "Building Division" under a single division management and in doing so the Board adhered to its long established basic criterion of including in the same bargaining unit employees with a community of interests. Counsel direct our attention to evidence which is said to support the Board's finding that "the apartment hotel employees share common interests and skills with other employees in the Building Division." They extract from the evidence testimony to show that while the hours and work at the hotel building differ from those at the office building, the skills and tasks required of all the maintenance and operation employees are "strikingly similar." It is not expressly contended that the hotel is engaged in an activity affecting commerce, but it is urged that the record supports the Board's finding that the hotel "is clearly an integral part of the Employer's operations at the Bartlesville location," and that "the hotel operations are integrated with Phillips' productive operations, in that staff from other sections of the Building Division are loaned to the hotel when it is more occupied than usual as a result of a Phillips stockholders meeting, a company softball tournament, or a Phillips production meeting." The facts are said to refute the petitioner's contention that the Board's general refusal to assert jurisdiction over ordinary hotels would extend to the hotel here in question.

There is evidence in the record which, if it had been accepted, would support the positions of the petitioner. There is other evidence which the Board accepted and which supports its finding. The Board is, of course, the agency empowered to find the facts, and in doing so it may, of course, draw all inferences which the facts authorize. This it has done and, supported by evidence which we find sufficient, has made factual conclusions which adequately support its finding that the hotel operations are an integral part of Phillips' interstate petroleum activities at Bartlesville; that all of the employees in question share common interests and skills; and that the interplay and exchange of employees from the office building in the maintenance and operation of the hotel and transfers of employees from the hotel to the other buildings and jobs in the Building Division, evidenced a

8. In the matter of Hotel Association of St. Louis, 92 N.L.R.B. 1388, 1390.

condition different from that of usual independent hotel operations.

There is some basis for the petitioner's complaint of the finding of the Board that the apartment hotel was constructed for the primary purpose of satisfying housing needs for employees and guests of the company and is an integral part of its interstate operations. However, the Board had evidence that when the hotel first opened Phillips' employees were given 30 days preference in which to select apartments on the first three floors then ready for occupancy; in July, 1950, approximately 70% of the rented apartments were occupied by Phillips' employees; Phillips' employer relation manager testified that at the time the building was constructed Phillips employees were "probably" having housing difficulties, and among the transient guests are numerous persons having business with Phillips. These things do not stand entirely alone in view of the testimony that employees from the petroleum productive operations from other sections of the Building Division are at times loaned to the hotel when it is somewhat crowded as a result of the activities of company employees, from which it may well be said to follow that similar and more numerous transfers could be made when, and if, the occasion might arise. We think these findings of the Board can not be said to be unsupported by the record. As stated above, these facts also show that the exercise of jurisdiction by the Board in this case did not evidence an unwarranted reversal of its position with reference to the hotel industry generally.

Phillips complains of the failure of the Boards to re-open the hearing for the purpose of receiving from it additional evidence on the question of the purpose of the construction of the hotel and the needs of the enterprise, but we think the Board's determination that it was insufficient to change its original finding was not an abuse of discretion.

While the question is close, and we are not entirely free of doubt, we conclude that under the facts of this case the Board was justified in finding that the apartment hotel operation and maintenance employees, together with Phillips' other operation and

maintenance employees at Bartlesville, constituted an appropriate bargaining unit. Consequently we deny the petition to set aside the order of the Board directing the petitioner to bargain with the union and deny the petition to vacate and adjudge enforcement of the order of the Board requiring Phillips to bargain with the union representing its operation and maintenance employees at Bartlesville.

Enforcement granted.