NATIONAL LABOR RELATIONS
BOARD, Petitioner,
v.
WTVJ, INC., Respondent.
No. 17564.

United States Court of Appeals
Fifth Circuit.
June 29, 1959.

Thomas J. Ryan, Atty., Marcel Mallet-Prevost, Asst. Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Jerome D. Fenton, Gen. Counsel, Owsley Vose and Christopher J. Hoey, Attys., N.L.R.B., Washington, D. C., for petitioner.

Frank A. Constangy, Marion A. Prowell, and Constangy & Prowell, Atlanta, Ga., for respondent.

Before HUTCHESON, Chief Judge, and RIVES and TUTTLE, Circuit Judges.

RIVES, Circuit Judge.

The Board petitions for enforcement of its order against the respondent based on findings that respondent, in violation of Section 8(a) (1) of the National Labor Relations Act, 29 U.S.C.A. § 158(a) (1), threatened employees with reprisals for engaging in union activities, promised them job security for withdrawing from the union, and interrogated them coercively concerning their union activities, and that respondent violated Section 8(a) (3) and (1) of the Act by discharging five employees because of their union activities. In its brief, "Respondent concedes that there is evidence in the Record to support the Board's finding of violation of Section 8(a) (1) and, while not admitting that it has violated Section 8(a) (1) of the Act, it does not herein oppose enforcement of that portion of the

Board's Order." Respondent does, however, vigorously contest that portion of the Board's order which directs the reinstatement with back pay of five employees.

The respondent operates a television station in Miami, Florida. In 1953, the International Brotherhood of Electrical Workers sought to organize the employees in its engineering and production departments. In a representation proceeding, the Board held that the unit sought was inappropriate; and, at least for the time being, the attempt at unionization was unsuccessful. In 1956, the IBEW renewed its efforts. An organizational meeting was held at which the IBEW and the International Alliance of Theatrical and Stage Employees presented arguments in favor of joining their respective organizations. Two of respondent's supervisors were present at the meeting but no point is made of that fact because their presence was at the invitation of the unions. Seventeen of the employees present, including the five employees here involved, signed cards authorizing Local 349 of the IBEW to represent them for bargaining purposes.

The organizational meeting was on January 13, 1957.

Four days later, on January 17 (according to the Board's findings, concededly based on substantial evidence), John Shay, the respondent's vice president, and Ashley Dawes, its director of production operations, began a series of interviews, interrogations, and threats of reprisal intended to discourage the unionization of the employees. On January 23 respondent discharged DeSimone, a member of the night production crew, on the next day Schwartz, and on February 4, Alexander and Griffith—all members of that crew. On January 28, respondent discharged Gaynes, a production director. All of the five employees had spoken out in favor of unionization, but respondent contends that they were discharged for legitimate reasons. The record shows that the respondent had good cause for the discharge of each of said employees, but the question is whether such causes were the real reasons for discharge. The Examiner held that the discharges were motivated both by legal and by illegal reasons.[1] See N. L. R. B. v. Whitin Machine Works, 1 Cir., 1953, 204 F.2d 883,

[1].     "The Floor Crew
"From the facts found above it appears that the decision to discharge the floor crew was made in haste and without regard to union activities but before the discharges were made effective the union activities of these employees became an independent or additional motivation for their discharge. The undersigned is not persuaded that union activities was the sole reason for the discharges and the late appearance of the floor crew at the 'Second Honeymoon' rehearsal and/or the 'long dinner periods' were pretexts to conceal the true reason. On the other hand, the undersigned is not persuaded that these discharges were made effective without regard to union activities. In the opinion of the undersigned, there were dual motivations for the discharges—the reasons assigned by Respondent and the union activities of the floor crew. It is now well settled that where an unlawful reason is a motivating cause, the co-existence of separate lawful reasons do not eliminate the unlawful aspect of the conduct. Accordingly, the undersigned concludes and finds that by the discharge of Joe DeSimone,

George Schwartz, Wilson Griffith and Dimitry Alexander, Respondent violated Section 8(a) (3) of the Act. Furthermore, in the opinion of the undersigned, the facts found reveal that the discharges were part of Respondent's efforts to discourage 'concerted activity' and were, therefore, violative of Section 8(a) (1) of the Act, even if they do not constitute violations of Section 8(a) (3).
                    "Lloyd Gaynes
"The facts found above reveal that Gaynes and Dawes constantly disagreed, that Dawes would have discharged Gaynes long before he did except for Shay's intervention, that Dawes finally delivered an ultimatum to Shay giving Shay a choice of discharging Gaynes or Dawes, that Dawes discharged Gaynes assigning as the reasons therefor the difficulties he (Dawes) and Gaynes had experienced, that Gaynes then saw Shay and was told by Shay that he (Gaynes) was being discharged because of the difficulties he (Gaynes) and Dawes had experienced and because of his (Gaynes') union activities. Here, as in the case of the floor crew, the undersigned believes that the discharge was not a pre-

885; N. L. R. B. v. C. & J. Camp, Inc., 5 Cir., 1954, 216 F.2d 113, 115; N. L. R. B. v. J. H. Rutter-Rex Mfg. Co., 5 Cir., 1956, 229 F.2d 816, 819, 820.

 The Board agreed with the Trial Examiner that the respondent unlawfully discharged the five employees, but, unlike the Trial Examiner, the Board concluded that the legitimate causes assigned by the respondent were mere pretexts and that actually the five employees were discharged because of their union activities. The Board in its decision sets forth at length its reasons for such findings. Without detailing the facts or the Board's reasoning, but bearing in mind the ample evidence of respondent's hostility to the unionization of its employees, we hold that substantial evidence on the record as a whole supports the Board's findings.

Respondent, however, calls attention that neither the General Counsel nor the charging union filed any exceptions to any finding or any conclusion of the Trial Examiner relating to the discharges, and insists that the Board has reviewed and reversed a part of the Examiner's findings and conclusions in violation of its own rule; specifically, Section 102.46, Rules and Regulations of National Labor Relations Board, Series 7: "No matter not included in a statement of exceptions may thereafter be urged before the Board, or in any further proceedings." We do not think so. Even absent an exception, the Board is not compelled to act as a mere rubber stamp for its Examiner. The narrow construction of the rule for which the respondent contends is, we think, inadmissible, for it would unduly cripple the Board in its administration of the Act. The Board affirmed the Trial Examiner's rulings that each of the five discharges were unlawful, but it disagreed with a part of his reasoning. The quoted rule of the Board does not, in our opinion, cover such a situation. The Board was free to use its own reasoning and was not bound by that of the Examiner. Compare N. L. R. B. v. Mackay Radio & Telegraph Co., 1938, 304 U.S. 333, 350, 351, 58 S.Ct. 904, 82 L.Ed. 1381; Consolidated Edison Co. of New York v. N. L. R. B., 1938, 305 U.S. 197, 224, et seq., 59 S.Ct. 206, 83 L.Ed. 126; N. L. R. B. v. Townsend, 9 Cir., 1950, 185 F.2d 378, 384; N. L. R. B. v. Stocker Mfg. Co., 3 Cir., 1950, 185 F.2d 451, 454; 42 Am. Jur., Public Administrative Law § 146. The order is therefore enforced in its entirety.

Enforced.

---

text situation but that the motivation for the discharge included Gaynes' union activity. Accordingly, here, as in the situation involving the floor crew, the undersigned believes, finds and concludes that the discharge violated both Sections 8(a) (3) and 8(a) (1) of the Act."