**INTERNATIONAL UNION, UNITED MINE WORKERS OF AMERICA; District 31, United Mine Workers of America, Petitioners,**

v.

**NATIONAL LABOR RELATIONS BOARD, Respondent.**

**No. 16048.**

United States Court of Appeals District of Columbia Circuit.

Argued Oct. 2, 1961.

Decided Jan. 25, 1962.

Mr. Willard P. Owens, Washington, D. C., for petitioner International Union,

United Mine Workers of America. Mr. Louis D. Meisel, Fairmont, W. Va., of the bar of the Supreme Court of West Virginia, pro hac vice, by special leave of court, for petitioner, District 31, United Mine Workers of America.

Mr. Robert Sewell, Attorney, National Labor Relations Board, of the bar of the Supreme Court of Wisconsin, pro hac vice, by special leave of court, with whom Messrs. Stuart Rothman, General Counsel, National Labor Relations Board, Dominick L. Manoli, Associate General Counsel, National Labor Relations Board, Marcel Mallet-Prevost, Assistant General Counsel, National Labor Relations Board, and Samuel M. Singer, Attorney, National Labor Relations Board, were on the brief, for respondent.

Before WILBUR K. MILLER, Chief Judge, and EDGERTON and FAHY, Circuit Judges.

FAHY, Circuit Judge.

The case comes to us on petition of International Union, United Mine Workers of America, and District 31, United Mine Workers of America, to review and set aside an order of the Labor Board issued September 29, 1960, finding petitioners to have violated section 8(b) (1) (A) of the Labor Management Relations Act [1] during an organizational campaign among the employees of five coal mining companies located in West Virginia. The Board found petitioners had restrained and coerced the employees in the exercise of their statutory right to refrain from union activity.[2] The Board requests enforcement of its order.

█ The five charging companies, whose employees were found to have been restrained and coerced, are Blue Ridge Coal Corp., M. & T. Coal Co., Marra Bros. Coal Co., Thompson Coal & Construction Co., and Sinsel Coal Co.[3] The organiza-

tional drive began in the spring of 1958 and was found by the Board to have resulted in mass picketing, road blocks, physical assaults and other intimidating conduct attributable to petitioners, thus violating the employees' rights.

The charges of Marra Bros., Blue Ridge and M. & T. were filed June 11, 1958, naming only District 31 as respondent. On June 12, 1958, Thompson filed its original charge naming as respondents "United Mine Workers of America, Harry Myers and its and his agents, members, employees, pickets and associates." [4] A copy of this charge was sent by registered mail to the address of District 31 at Fairmont, West Virginia, and was accepted and receipted for by the secretary-treasurer of District 31. On November 19, 1958, Blue Ridge, M. & T. and Marra Bros. each amended its original charge, naming for the first time the International as respondent. On the same day, November 19, Thompson amended its initial charge and specifically named the International as respondent. This charge places the violations alleged to have been committed by either the International or District 31 affecting the rights of Thompson's employees as no earlier than June 9, 1958. The four amended charges referred to were served upon the International on November 22 at its Washington, D. C., address. On September 4, 1958, Sinsel filed its initial charge, naming only District 31 as respondent, followed by an amendment thereto on November 24 in which the International was included. Sinsel's amended charge was served on the International on November 26.

The Board found that the Thompson charge of June 12 named the International as a party, that service was effected on the International, and that there was thus established the section 10(b) [5] lim-

---

1. 61 Stat. 140 (1947), as amended, 29 U.S.C.A. § 158 (1958).

2. § 7, 61 Stat. 140 (1947), as amended, 29 U.S.C.A. § 157 (1958).

3. Hereinafter referred to as Blue Ridge, M. & T., Marra Bros., Thompson and Sinsel.

4. Harry Myers was found to be a representative of District 31 of the United Mine Workers of America.

5. Section 10(b) of the Labor Management Relations Act provides in pertinent part: "That no complaint shall issue based upon any unfair labor practice occurring

itation period, that is, six months prior to June 12, for all unfair labor practices committed by the International with respect to the employees of all five companies, though none of the four companies other than Thompson had charged the International until their November amended charges were filed. The theory of the Board was that all the alleged unfair practices alleged against the International were related and could be encompassed within the single Thompson charge of June 12. Reasoning thus the Board on the basis of the latter charge filed a consolidated complaint against the International covering all violations said to have been committed by the International affecting the employees of all five companies during a period of six months prior to June 12.

The International contends that (1) the Thompson charge of June 12 did not name it as a party; (2) if it did name the International then service on the secretary-treasurer of District 31 was not service "upon the person against whom such charge is made" as required by section 10(b); and (3) that even if the International Union had been named in and served with the Thompson charge of June 12, the Board could not, on the basis of this charge, validly issue a complaint against the International for unfair labor practices affecting employees of companies other than Thompson, not set forth in the Thompson charge. We think this latter contention must be sustained. This makes it unnecessary to decide whether or not the Thompson charge of June 12 was against or served upon the International.

We so conclude for the following reasons: The November Thompson charge clearly was against and served upon the International. It covered the prior six months, which took in the first Thompson charge of an unfair labor practice against the International, alleged to have occurred June 9. It is accordingly unnec-

essary, insofar as the Thompson charges against the International are concerned, to rely upon that company's June 12 charge. As to the charges of the other companies they must "stand on their feet," as it were; insofar as the International is concerned those charges cover only the six months periods preceding the November dates when these companies for the first time named and served the International. These companies cannot come in, as against the International, on the basis only of the Thompson June 12 charge against the International.

For a contrary position the Board relies upon N. L. R. B. v. Fant Milling Co., 360 U.S. 301, 79 S.Ct. 1179, 3 L.Ed.2d 1243. That case, however, concerned the power of the Board to consider unfair labor practices committed subsequent to the filing of the charge and while the matter was pending before the Board. It was said that the additional and subsequent practices were related to the violations charged originally against the same employer. But the Court added:

"What has been said is not to imply that the Board is, in the words of the Court of Appeals, to be left 'carte blanche to expand the charge as they might please, or to ignore it altogether.' * * * Here we hold only that the Board is not precluded from 'dealing adequately with unfair labor practices which are related to those alleged in the charge and which grow out of them while the proceeding is pending before the Board.'"

360 U.S. at 309, 79 S.Ct. 1184. Neither National Licorice Co. v. N. L. R. B., 309 U.S. 350, 369, 60 S.Ct. 569, 84 L.Ed. 799, nor N. L. R. B. v. Gaynor News Co., 197 F.2d 719 (2d Cir.1952), aff'd, A. F. L. v. N. L. R. B., 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455, both cited by the Board in its decision, supports the Board's position in this case. In National Licorice the Court permitted the Board in its complaint to deal with unfair labor prac-

more than six months prior to the filing of the charge with the Board and the service of a copy thereof upon the person

against whom such charge is made * * *."

61 Stat. 146 (1947), as amended, 29 U.S.C.A. § 160(b) (1958).

tices not included in a charge but which "related to those alleged in the charge and which grow out of them while the proceeding is pending before the Board." And in Gaynor News, as well as in National Licorice, the enlarged complaint was against the same employer who had been charged. In the present case, however, the practices attributed to the International affecting employees of other companies during the six-months period which preceded the Thompson charge of June 12 obviously did not occur while that charge was pending before the Board. Moreover the present case is unlike Fant Milling in that the employees of companies other than the charging company are alleged to have been restrained and coerced. The expanded interpretation which the Board here gives the Fant Milling doctrine is not warranted by that decision and we think is inconsistent with section 10(b) of the Act, which contemplates that the complaint shall set forth the unfair labor practices which have been charged, though it may include other related ones arising while the charge is pending before the Board. It may not include unstated ones which might previously have occurred affecting employees of a company other than the company which has filed a charge. Thompson in filing its June 12 charge acted only on its own behalf. To hold that it authorized the Board to file a complaint involving the employees of other companies, and in respect of unnamed and undated occurrences, would disrupt the Act's procedural plan of charge and complaint as set forth in section 10.

By reason of the foregoing the International may be held liable only for unfair labor practices occurring on and after May 23, 1958, at M. & T., Blue Ridge, Marra Bros., and May 27 in the case of Sinsel. The earliest unfair labor practices among Thompson's employees, as we have said, were June 9, 1958, which was within six months prior to the service of Thompson's amended charge which clearly named, and was served upon, the International.

We turn now to the evidence and findings of unfair labor practices. The Board's findings of violations by the International among the employees of the several companies within the times during which the International may be held responsible, as we have specified, are approved. The evidence supports the findings of the Board of the commission of these unfair labor practices. Those found to have been committed by the International before the cut-off dates specified as to the employees of each company are disapproved because barred by the respective periods of limitations.

As to District 31, the times for which it may be held responsible embrace the periods of six months preceding the filing and service of the several charges against it, including the Thompson charge of June 12, 1958, the latter charge being served on District 31 on June 13, 1958. The unfair labor practices found within these periods are also approved as substantiated by the evidence.

In view of the above situation we shall not ourselves attempt initially to modify the order of the Board. We request the parties to seek agreement as to its form, accepting for that purpose the rulings we have made. If unable to agree the court should be advised.

As of possible assistance toward agreement we add the following:

1. In view of the nature of the unfair labor practices found we think the Board has a discretion to require, as in paragraph 1(a) of the present order, that petitioners cease and desist from restraining and coercing not only the employees of the five charging companies but employees engaged in mining operations within the geographic limits of District 31 "by exerting force, or committing acts of force and violence against said employees, or any of them, or by using or threatening to use force or violence, or by taking or threatening to take punitive action or economic reprisals against any of said employees, unless said employees join in the concerted activities or become members of said District 31 or of its affiliated locals."

■ ■ 2. Paragraph 1(b) of the present order requires petitioners also to cease and desist from "in any manner" restraining or coercing said employees or any of them, in the exercise of their right to refrain from any or all of the concerted activities granted them under section 7 of the Act. In our opinion these generalized provisions should now be reconsidered as possibly inconsistent with Communications Workers etc. v. N. L. R. B., 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896; N. L. R. B. v. Express Publishing Co., 312 U.S. 426, 61 S.Ct. 693, 85 L.Ed. 930; and our decision in International Bhd. of Teamsters v. N. L. R. B., 104 U.S.App.D.C. 359, 262 F.2d 456. And see Federal Trade Comm. v. Broch & Co., U.S., 82 S.Ct. 431, particularly the reference N. L. R. B. v. Express Publishing Co., supra. Moreover, peaceful, valid activities should not be inhibited by a cease and desist order which, though its purpose is to reach only illegal conduct, is framed so broadly as to cause petitioners to refrain from that which is legal for fear of violating the order or court decree enforcing it.

3. We do not find in the Board's opinion a justification for requiring the notice to be published in a newspaper of general circulation within the territorial limits of District 31, in addition to the quite extensive posting required by other provisions of the order. We may speculate that this provision arises from the fact that paragraph 1(a) of the order covers certain activities among all employees engaged in mining operations within the geographic limits of District 31; but we think this reason for it would tend more to create doubt as to the validity of giving the order such scope as paragraph 1(a) does than it would tend to justify the newspaper publication.

## DECREE

This cause came to be heard on the petition of the International Union, United Mine Workers of America, and District 31, United Mine Workers of America to review an order of the National Labor Relations Board issued against them on September 29, 1960, and on the Board's cross-petition for enforcement of its order. The Court, having heard argument of respective counsel and having considered the briefs and the transcript of the record filed in this cause, on January 25, 1962 handed down its decision affirming, as modified, the Board's findings with instructions to seek agreement on the form of the decree. The parties having stipulated on the form of the decree,

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED by the United States Court of Appeals for the District of Columbia Circuit that petitioners International Union, United Mine Workers of America, and District 31, United Mine Workers of America, their officers, representatives, agents, successors, and assigns shall:

1. Cease and desist from:

(a) Restraining and coercing the employees, or any of them, of Blue Ridge Coal Corporation, M & T Coal Company, Marra Bros. Coal Co., Thompson Coal and Construction, and Sinsel Coal Co., or any other employees engaged in mining operations within the geographical limits of the jurisdiction of District 31, United Mine Workers of America, in the exercise of the rights guaranteed them by Section 7 of the Act, by exerting force, or committing acts of force and violence against said employees, or any of them, or by using or threatening to use force or violence, or by taking or threatening to take punitive action or economic reprisals against any of said employees, unless said employees join in the concerted activities or become members of said District 31 or its affiliated locals;

(b) In like or related manner restraining and coercing said employees or any of them, in the exercise of their right to refrain from any or all of the concerted activities guaranteed them by Section 7 of the Act.

2. Take the following affirmative action, which the Board has found will effectuate the policies of the Act:

(a) Post in conspicuous places in the business offices of District 31, United

Mine Workers of America, where notices and communications to members are customarily posted, copies of the notice attached hereto as Appendix A. Copies of the notice, to be furnished by the Regional Director for the Sixth Region, shall, after being signed by official representatives of United Mine Workers of America, and of District 31, United Mine Workers of America, be posted and maintained for a period of 60 days thereafter. Reasonable steps shall be taken by the petitioners, to insure that said notices are not altered, defaced, or covered by any other materials;

(b) Sign, as aforesaid, and mail sufficient copies of the said notice, attached hereto as Appendix A, to the Regional Director for the Sixth Region, for posting, the employers operating said mines and tipples being willing, at each of the mines and tipples involved in this proceeding in the places thereat where notices, bulletins, or communications to the employees of said mines and tipples are customarily posted. Such copies of the notice shall be furnished petitioners by the said Regional Director;

(c) Sign, as aforesaid, and forward to each local of District 31, of United Mine Workers of America, a copy of the notice attached hereto as Appendix A, with accompanying instructions directing and ordering the proper officers of the local to post and maintain same for a period of 60 consecutive days thereafter, at the office, headquarters, or meeting place or places of said local, in the place thereat where notices, bulletins, and communications to members of the local are customarily posted, or, if the local does not have an office, headquarters, or regular place of meeting, or place where communications to the members are customarily posted, that said notice be communicated to the membership of the local in the manner, and by the means, in which notices, bulletins or communications are customarily transmitted to its members. Copies of the notice for such purpose shall be furnished petitioners by the said Regional Director;

(d) Notify the Regional Director for the Sixth Region, in writing, within 10 days from the date of this Decree, as to what steps the petitioners have taken to comply herewith.

## APPENDIX A
### NOTICE
### PURSUANT TO A DECREE

of the United States Court of Appeals for the District of Columbia Circuit enforcing, as modified, an order of the National Labor Relations Board, and in order to effectuate the policies of the National Labor Relations Act, as amended, we hereby notify you that:

WE, UNITED MINE WORKERS OF AMERICA AND UNITED MINE WORKERS OF AMERICA, DISTRICT 31, our officers, representatives, and agents WILL NOT restrain and coerce the employees engaged in any of the mining operations of Blue Ridge Coal Corporation, M & T Coal Company, Marra Bros. Coal Co., Thompson Coal and Construction, and Sinsel Coal Co., or any other employees engaged in mining operations within the organizing jurisdiction of DISTRICT 31, UNITED MINE WORKERS OF AMERICA, in the exercise by them of the rights guaranteed to them in Section 7 of the National Labor Relations Act, by using or threatening them with force or violence, barring their ingress and egress to and from work, physically preventing them from working, or threatening punitive action or reprisals against them unless they become members of the UNITED MINE WORKERS OF AMERICA,

FURTHER, WE WILL NOT in like or related manner restrain and coerce said employees, or any of them, in the exercise of their right to refrain from any or all of the concerted activities guaranteed to them by Section 7 of the National Labor Relations Act, as amended.

UNITED MINE WORKERS OF
AMERICA
　　　　(Union)

Dated ―――― By ――――――
　　　　(Representative) (Title)

UNITED MINE WORKERS OF
AMERICA, DISTRICT 31
　　　　(Union)

Dated ―――― By ――――――
　　　　(Representative) (Title)

This notice must remain posted for 60 days from the date hereof and must not be altered, defaced, or covered by any other material.