**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**CENTRAL POWER & LIGHT COM-PANY, Respondent.**

No. 27699.

United States Court of Appeals,
Fifth Circuit.

May 18, 1970.

Rehearing Denied and Rehearing En Banc Denied July 7, 1970.

Marcel Mallet-Prevost, Asst. General Counsel, N.L.R.B., Washington, D. C., Clifford Potter, Director, Region 23, N.L.R.B., Houston, Tex., Allen H. Sachsel, Atty., N.L.R.B., Washington, D. C., for petitioner.

G. William Baab, Dallas, Tex., for intervenor Intl. Brotherhood of Electrical Workers, AFL-CIO.

L. G. Clinton, Jr., A. J. Harper, II, Houston, Tex., for respondent.

Before THORNBERRY, DYER and CLARK, Circuit Judges.

THORNBERRY, Circuit Judge:

This is a petition by the National Labor Relations Board to have this Court enforce an order of the Board against the Central Power and Light Company. The Company is required by the order to cease and desist from unfair labor practices, reinstate a discharged employee, give certain other types of relief, and post notices. Although the evidence adduced by the Board is far from overwhelming, upon close inspection we have concluded that it meets the substantial evidence standard, which is the standard this Court is required to employ in reviewing the Board's use of its expertise. Accordingly, we enforce the order.

Before considering the merits of the Board's findings, we are met with a statute of limitations problem. The Company contends that the Board was barred by the statute of limitations, section 10(b) of the Act, from considering an allegedly discriminatory no-solicitation

rule promulgated by the Company. We first discuss this issue and then proceed to consider whether substantial evidence supports each of the Board's findings of violations.

## I. THE SECTION 10(b) ISSUE

Section 10(b)[1] of the National Labor Relations Act states that " * * * no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board." The limitations argument applies only to the allegedly illegal no-solicitation rule, but the Company has pursued it vigorously. It arises from the following facts: The Board alleges that the rule was promulgated in March, April and May, 1967. Within six months of that date, the Union filed a charge with the Board, alleging the discriminatory discharge of employee Wayne Davis and stating that the Company had violated section 7 rights by "other acts and conduct." The charge did not specifically include the no-solicitation rule. The NLRB issued a complaint based upon the charge and tried the case.

In November, more than six months after the promulgation of the rule, the Union filed a second charge with the Board. This charge alleged that a reprimand issued to employee Uhlenhaker was discriminatory and made other assertions of violations, again without specifically mentioning the no-solicitation rule but including the same "other acts and conduct" language that the first charge contained. A few months after the second complaint was filed, the possibility that the Uhlenhaker reprimand was related to the no-solicitation rule apparently occurred to the General Counsel, and he moved to reopen the first complaint and consolidate it with the second. The Trial Examiner granted this motion. Thereafter, the General Counsel moved to amend the consolidated complaint to include allegation of the no-solicitation rule as promulgated in May. This motion, too, was granted. The Company argues that consideration of the no-solicitation rule was barred because it was promulgated more than six months before the second charge was filed and because it was not specifically enough alleged in either charge.

We have determined that section 10(b) did not bar the Board from considering the promulgation of the no-solicitation rule. Under these circumstances, the issue was properly brought before the Board by the first charge. The purpose of a charge is to set a board inquiry in motion. The inquiry may turn up events not specifically contemplated by the charge, but the Board's duty to the public then requires it to complain of those events if they are unfair labor practices. The charge is thus not intended to be a detailed pleading or to specify the issues ultimately to be raised before the Trial Examiner; the Board's complaint serves that function. All that the requirement is really concerned about is that the instigation of an investigation and complaint proceed under a formal charge made by the party aggrieved and not from the Board's own initiative.[2] Accordingly, general allegations such as that the employer "by other acts and conduct * * interfered with, restrained and coerced its employees in the exercise of their rights guaranteed in section 7 of the Act," as the charge here alleged, are legally sufficient to cause inclusion of other acts if they are sufficiently related to the specific acts alleged. And sufficient relation has generally been found between acts that are part of the same course of conduct, such as a single campaign against a union. Texas Industries, Inc. v. NLRB, 5th Cir. 1964, 336 F.2d 128, 132; see also NLRB v. Bin-Dicator

---

1. 29 U.S.C. § 160(b) (1965).

2. "[T]he charge is not a formal pleading, and its function is not to give notice to the respondent of the exact nature of the charges against him. * * * This is the function of the complaint." Texas Industries, Inc. v. NLRB, 5th Cir. 1964, 336 F.2d 128.

Co., 6th Cir. 1966, 356 F.2d 210, 214; NLRB v. Kohler Co., 7th Cir. 1955, 220 F.2d 3, 7–8; NLRB v. Gaynor News Co., 2nd Cir. 1952, 197 F.2d 719, 721; cf. NLRB v. Fant Milling Co., 1959, 360 U.S. 301, 307, 79 S.Ct. 1179, 1183, 3 L. Ed.2d 1243.[3] All of the cases recognize that the Board has "broad leeway" in conducting its investigation and bringing its complaint. In this case, since the events complained of were all part of the same alleged anti-union campaign, were close together in time, and were clearly covered by the general language of the formal charge, there is little merit to any argument that the first charge did not authorize the Board to complain of the no-solicitation rule.

 In another, related line of attack, the Company argues that the Board has used "the procedural device of consolidation" to "thwart and circumvent" the purposes of section 10(b). This argument appears to be based upon the fact that the General Counsel moved to reopen the first charge, then had it consolidated with the second. It seems, however, that if anything "thwarted and circumvented" the application of section 10(b) to the case it was the reopening of the first charge. But it is well settled that the determination to reopen a case is a matter resting within the discretion of the Trial Examiner and the Board and should not be disturbed where no abuse of that discretion has been shown. NLRB v. Yale Mfg. Co., 1st Cir. 1966, 356 F.2d 69, 71; Phillips Petroleum Co. v. NLRB, 5th Cir. 1965, 206 F.2d 26, 30; Metal Blast, Inc. v. NLRB, 6th Cir. 1963, 324 F.2d 602, 604. In Fant Milling, supra, the Supreme Court approved a Board decision to reissue a withdrawn complaint in light of evidence that appeared after the withdrawal. 360 U.S. at 302–

304, 79 S.Ct. at 1180–1181. The case at bar is similar, and certainly furnishes basis for the Board's exercise of its discretion to reopen. The Board found, and its finding is supported by substantial evidence, that the Uhlenhaker reprimand letter was an enforcement of the no-solicitation rule. The reprimand letter was sent after the first charge had been tried, and it related back to and brought into focus the "other acts and conduct" that the charge covered. The General Counsel indicated that the Board had not enough evidence of illegality of the no-solicitation rule at the time the first charge was tried. Under these facts, reopening of the first charge was appropriate. Finally, if the Company's argument against the thwarting of section 10(b) by consolidation is directed against consideration of events charged in the second charge together with the first, the argument is frivolous. Fant Milling, supra, holds directly that events subsequent to a charge may be included in the Board's complaint or used as evidence at trial. And the cases clearly indicate that when charges are consolidated, all evidence pertaining to either may be introduced at trial. E. g., NLRB v. Dal-Tex Optical Co., 5th Cir. 1962, 310 F.2d 58, 61.

The cases the Company has cited to show the applicability of the limitations statute are not in point. In NLRB v. Electric Furnace Co., 6th Cir. 1964, 327 F.2d 373, 375, and NLRB v. Silver Bakery, Inc., 1st Cir. 1965, 351 F.2d 37, the charging parties withdrew the charges filed, with Board approval, and the Board later attempted to base unfair labor complaints upon them. Such a procedure would clearly violate section 10(b), since a withdrawn charge is no charge at all. And in International Union,

---

3. Cf. Exber, Inc. v. NLRB, 9th Cir. 1968, 390 F.2d 127; NLRB v. Dinion Coil Co., 2d Cir. 1952, 201 F.2d 484. These cases state that an unfair labor practice must be "closely" related to specific practices alleged in the charge in order to be included. Both cases, however, held that the practices in question were not barred by 10(b), and the requirement of a "close" relationship does not seem to be in keeping with the purpose of the charge-complaint procedure. Accordingly, we continue to rely upon Texas Industries as stating the law of this Circuit. The relationship need be close enough only to negate the possibility that the Board is proceeding on its own initiative rather than pursuant to a charge.

United Mine Workers of America v. NL RB (Blue Ridge Coal Corp.), 1962, 112 U.S.App.D.C. 60, 299 F.2d 441, the Board sought to extend a charge by one company against a union to cover unfair labor practices the union had allegedly committed against several other companies. Without approving or disapproving the result of that case, we find it inapplicable to our case, which involves a single struggle between a union and a company. We hold that under the facts here presented section 10(b) did not bar the Board's consideration of the no-solicitation rule. We now proceed to consider whether the Board's findings of violations are supported by substantial evidence.

## II. THE SUBSTANTIAL EVIDENCE QUESTION

The International Brotherhood of Electrical Workers began an effort to organize the Company on or before January 27, 1967. It is clear that the Company was aware of the Union's activities very early, because its district manager directed a letter to all employees advising them that the Union could do them no good but could do "a lot of harm." Also, in early spring, the Company promulgated its allegedly discriminatory no-solicitation rule. Throughout the summer, the Company discharged employee Wayne Davis, allegedly for his union sympathies, reprimanded employee Fred Uhlenhaker, allegedly in enforcement of the illegal no-solicitation rule, and allegedly made threats concerning the Union and created an impression of surveillance at Union meetings. The Board concluded that all of these events were motivated by anti-union animus and hence violative of the Act. The Company challenges each of the Board's conclusions. We shall discuss each of the five issues seriatim.

██ The discharge of Wayne Davis came after eleven years of his employment with the Company and after eight or nine non-automatic wage increases.

The evidence that the Company knew of Davis' pro-union sentiments consisted of accounts of a discussion Davis had with a number of other janitors, including Head Janitor Mays, whom the evidence showed to be likely to inform management. Davis endorsed the union in unequivocal terms. A few weeks later, Davis left the Company's plant about 9 p. m., during his "lunch break," and drove with cleaning supplies to the Corpus Christi Yacht Club. During the last six years, Davis had also worked mornings as a janitor at the Yacht Club, and it was his custom to take his lunch hour from Central Power and Light Company every Tuesday to work at the Yacht Club as well. This particular time, however, Company officials had waited for Davis to leave, had followed him to the Club, and had waited for him in the parking lot on his return. Superintendent Shepard asked Davis where he had been, and Davis told him; Shepard then fired him on the spot. Davis had engaged in this conduct openly for several years and the Board seems justified in its inference that management could have fired him earlier. Company witnesses were self-contradictory in their explanations of the cause for the discharge. We find this evidence sufficient to support the Board's conclusion that Davis was fired for union sentiments, even though we might conceivably come to a contrary conclusion if the facts were ours to try originally. No doubt, cause existed for the discharge, and Davis was not a model employee. This the Board readily concedes. Nonetheless, the existence of cause is not a defense to a discharge actually motivated by anti-union purposes. See NLRB v. WTVJ, Inc., 5th Cir., 1959, 268 F.2d 346, 347; NLRB v. Ace Comb Co., 8th Cir. 1965, 342 F.2d 841, 847. The cases also clearly indicate that open hostility by the employer to the union and discharge of an employee shortly after the employer learns of his union activity may give rise to an inference that the discharge was discriminatory. NLRB v. Camco, Inc., 5th Cir. 1966, 369 F.2d 125, 127.

The Company's reprimand letter to Uhlenhaker came as a result of Uhlenhaker's conduct while a line crew was changing a wire installation. Uhlenhaker came down from the pole and began a heated discussion concerning the Union with another employee who at the time was making a wire connection at the bottom of the pole. The other employee complained of this conduct, and the Company's district manager sent Uhlenhaker the following letter:

> We continue to receive reports that you are bothering employees on Company property and on Company time, thus hindering them in the performance of their normal duties in your effort to coerce them into signing a union authorization card.
>
> ██ By so doing you are interfering with the work and the efficiency of the Company and such action cannot be tolerated. Your continuance of such activity may subject you to disciplinary action.

Uhlenhaker at first did not know what the letter referred to. Later, Company officials Smith and Rowe responded to Uhlenhaker's inquiry concerning the letter by visiting him and informing him that although there was no complaint about his work, he had the reputation of being "the number one Company bitcher" and that he might advance farther in the Company if he changed his attitude. The Board concluded, permissibly we think, that the letter was based upon the Company's illegal no-solicitation rule since it was written in general terms, explained by Smith and Rowe in general and impliedly coercive terms, and did not specify the incident concerned. Furthermore, it broadly condemned speech about the Union on Company property and on Company time.

██ The no-solicitation rule itself was evidenced in part by the Uhlenhaker reprimand. The Board concluded that it actually originated in March, April and May of 1967. The Company instructed its foremen to warn their crew members that the Company would no longer permit employees to discuss the Union during Company time. The evidence shows that foremen Smith, Farquhar, Mays and Strzinek conveyed the message to their men with hints of strong enforcement. There is also evidence that the rule was enforced during lunch hours and during time when union discussion could not possibly have interfered with work, such as the substantial amounts of time during which employees traveled by Company truck to and from jobs. No other topic of conversation was prohibited, and the evidence shows that employees engaged heavily in conversation on all topics. Under these circumstances, we must hold that substantial evidence supports the Board's conclusion that the rule was enacted for the purpose of discriminating against union activity. A no-solicitation rule that on its face covers work time is presumptively valid, but only in the absence of evidence that it was enacted for a discriminatory purpose. Republic Aviation Corp. v. NLRB, 1945, 324 U.S. 793, 803, 65 S.Ct. 982, 988, 89 L.Ed.2d 1372; Ridgewood Management Co. v. NLRB, 5th Cir. 1969, 410 F.2d 738, 740; William L. Bonnell Co., v. NLRB, 5th Cir. 1969, 405 F.2d 593, 595. The cases indicate coverage of non-work time or time when talk cannot interfere with work, and especially non-coverage of other subjects of conversation, may give rise to an inference of anti-union purpose.

██ The allegations of threats and impressions of surveillance may be dealt with briefly. There is evidence that Head Janitor Mays informed his men that the Company might discontinue its practice of giving employees discounts on appliances and that insurance costs might rise if the Union came. This prediction is not within the free speech provision because it is not "carefully phrased on the basis of objective fact to convey [the Company's] belief as to demonstrably probable consequences beyond [its] control." NLRB v. Gissel Packing Co., 1969, 395 U.S. 575, 618–619, 89 S.Ct. 1918, 1942, 23 L.Ed.2d 547. Foreman Farquhar warned employee Smith that there were "stool pigeons" attending Union meetings, that Company Vice President Collins knew everything that went on at the meetings, and

that Collins knew who went and what was said. *Cf.* NLRB v. Neuhoff Bros. Packers, Inc., 5th Cir. 1967, 375 F.2d 372, 374. Both of these matters must be considered against the background of hostility to the Union that the Board found from the other evidence.

We reiterate our belief that the evidence in favor of the Board is far from overwhelming. On this evidence, however, the Board has concluded that the Company maintained a covert coercive campaign against the Union. These are difficult matters to investigate and to prove. We are thus required to give great deference to the Board's expertise when substantial evidence is presented, whether we ourselves find it persuasive or unpersuasive, conclusive or inconclusive. All of the Board's conclusions were conclusions to which it might reasonably accede on the basis of the evidence, and we cannot set its order aside.

Enforced.

## ON PETITION FOR REHEARING AND PETITION FOR REHEARING EN BANC

### PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.