Ivan C. McLEOD, Regional Director of the Second Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner-Appellant,

v.

LOCAL 282, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, Respondent-Appellee.

No. 348, Docket 29305.

United States Court of Appeals Second Circuit.

Submitted March 3, 1965.

Decided May 5, 1965.

Arnold Ordman, Gen. Counsel, National Labor Relations Board, Washington, D. C. (Dominick L. Manoli, Associate Gen. Counsel, Julius G. Serot, Asst. Gen. Counsel, Allison W. Brown, Jr., and Marvin Roth, Attys., National Labor Relations Board, Washington, D. C., on the brief), for petitioner.

Cohen & Weiss, New York City (Bruce H. Simon, Robert S. Savelson, New York City, of counsel), for respondent.

Before LUMBARD, Chief Judge, and MOORE and HAYS, Circuit Judges.

HAYS, Circuit Judge:

The petitioner McLeod, Regional Director for the National Labor Relations Board, appeals from the denial by the district court of a petition under Section 10(*l*) of the National Labor Relations Act [1] for a temporary injunction against the respondent Local 282 of the Teamsters Union enjoining certain activities of the local and its agents alleged by petitioner to violate Section 8(b) (4) (i) (ii) (B) of the Act.[2] We reverse because we find that there was reasonable cause to believe that the respondent local union violated Section 8(b) (4) (i) (ii) (B) and that the issuance of the injunction requested by petitioner was "just and proper" in this case. National Labor Relations Act, Section 10(*l*).

The evidence as found by the district court is undisputed. The respondent local union engaged in a campaign of work stoppages and other coercive activities in and around New York City and Long Island to protest the use by construction contractors of owner-operators of trucks who compete with members of the local for the available work in the

---

1. 61 Stat. 149 (1947), as amended, 73 Stat. 544 (1959), 29 U.S.C. § 160(*l*) (Supp. V, 1964):

"Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4) * * * (B) * * * of section 8(b), * * * the preliminary investigation of such charge shall be made forthwith * * *. If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any district court of the United States * * * within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law * * *."

2. 61 Stat. 141 (1947), as amended, 73 Stat. 542 (1959), 29 U.S.C. § 158(b) (4) (i) (ii) (B) (Supp. V, 1964):

"(b) It shall be an unfair labor practice for a labor organization or its agents—
"(4) (i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is—
* * * * * *
"(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in the products of any other producer, processor, or manufacturer, or to cease doing business with any other person, or forcing or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9: *Provided*, That nothing contained in this clause (B) shall be construed to make unlawful, where not otherwise unlawful, any primary strike or primary picketing; * * *."

area and whose terms of employment are believed by the union to undermine the standards set by the local in its contracts with the construction contractors. At issue here are certain tactics employed by the local and its agents in pursuance of this campaign.

Salvatore Fili, who owns and drives a concrete mixer, was in the business of buying concrete from suppliers and selling it to building contractors and homeowners. In October 1963, when Fili sought to get concrete from his usual supplier, Certified Industries, he was told by Certified's dispatcher and by respondent's shop steward representing Certified's drivers that he could not any longer buy concrete from Certified. The shop steward told Fili that they "were not loading non-contract drivers." Certified's head dispatcher had previously been warned that if Certified loaded Fili's mixer, Certified's own drivers "would probably not go to work."

Mario Boccasini, who owned two dump trucks, from time to time transported asphalt for Frank Mascali & Sons, Inc., a construction contractor. In Boccasini's presence respondent local's business agent told the Mascali dispatcher not to load any trucks not covered by a union contract and offered to provide a blacklist of owner-operators.

Pave-Rite Construction Corp., a street-paving contractor, hired the two Boccasini trucks to transport asphalt from the plant of Tri-Boro Asphalt Corporation, the usual supplier for Pave-Rite, to a construction site. The local's business agent and another local representative complained to the dispatcher, and an official of Tri-Boro was warned that, "Because of Boccasini's riding from [the] * * * plant, they were going to have to shut down the whole plant," "because * * * the [Local] 282 drivers would refuse to go to work for [Tri-Boro]." Thereupon, Tri-Boro refused to permit Boccasini to transport asphalt from the Tri-Boro plant

In another incident, Arthur Koenig, who owned and operated a dump truck, was hired by Thomas Rosati, Inc., a paving contractor, to transport asphalt from Amfar Asphalt Corp., to Rosati's construction site. In December 1963 the local's shop steward at Amfar warned Koenig, "I should knock you off, * * * the Union says that only union contract trucks [can] * * * haul out." On March 30, 1964, the same shop steward told Koenig and the owner of Rosati that Koenig could not load at Amfar because Koenig was not working under a union contract. The next day Koenig was again told by the shop steward that he could not load at Amfar. An Amfar official questioned the shop steward's authority, but when told that Local 282 authorized the order, he told Koenig, "Well, I don't want to have any trouble here at the plant, you better go." Thereafter, Koenig was unable to transport asphalt for Rosati from the Amfar plant.

Mario Boccasini, Nicholas J. Boccasini, Salvatore Fili and the Long Island Truck Owners Association, Inc., on behalf of its members, filed charges with the Board alleging that the local had violated Section 8(b) (4) (i) (ii) (B). They charged that the union had coerced certain employers directly, and indirectly through their employees, by threatening strikes and work stoppages in order to force the employers to cease doing business with the owner-operators.

■ The Regional Director's petition for a Section 10(l) injunction was somewhat differently framed. It alleged that the local was coercing employers, such as Tri-Boro, Mascali, Certified and Amfar, to cease doing business with Pave-Rite, Fili and Rosati and other contractors "who utilize the services" of independent owner-operators.

The respondent urges that the district court has no jurisdiction to grant the injunction because the petition alleges violations substantially different from those contained in the charge filed with the Board. We hold that violations alleged in the petition and the factual allegations on which they are based are

substantially the same as those set forth in the charge.

International Union, UMW v. NLRB, 112 U.S.App.D.C. 60, 299 F.2d 441, 444 (1962), cited by respondent, held that a Board complaint against a labor union "may not include unstated [unfair labor practices] * * * which might previously have occurred affecting employees of a company other than the company which has filed a charge." In that case the inclusion of unfair labor practices of other companies would have resulted in by-passing the six-month statutory limitation period. In the present case the factual allegations set forth by the petition are the same as those contained in the charge. In entertaining the petition we do not permit the Board "'carte blanche to expand the charge as they might please, or to ignore it altogether.'" NLRB v. Fant Milling Co., 360 U.S. 301, 309, 79 S.Ct. 1179, 1184, 3 L.Ed.2d 1243 (1959), quoting 258 F.2d 851, 856 (5th (Cir. 1958).

■■ The respondent also contends that this appeal is moot because of the district court's granting of a similar injunction against the respondent union in a related case, McLeod v. Local 282, IBT, 241 F.Supp. 831 (E.D.N.Y.1964). An examination of the opinion in that case reveals that, although the court granted the petition for an injunction against similar coercive acts of respondent local, the case concerns construction contractors other than those named in the petition in the present case, and is based upon unfair labor practices additional to those alleged here.

■■ The respondent argues that the district court's denial of the petition should not be reversed unless the district court's findings of fact are clearly erroneous. Federal Rules of Civil Procedure 52(a). This standard of review is not an issue in our reversal of the decision below, "[b]ecause there is no dispute as to the material facts in evidence and because we are faced solely with questions of law * * *." McLeod v. Business Mach. and Office Appliance Mechanics

Conference Bd., 300 F.2d 237, 239 (2d Cir. 1962).

The issue, then, is whether the petitioner had "reasonable cause to believe" that the respondent local violated Section 8(b) (4) (i) (ii) (B).

On the basis of the evidence to which we have adverted briefly we hold that there was reasonable cause to believe that the local union threatened, coerced and restrained Tri-Boro, Mascali, Certified and Amfar and engaged in and induced and encouraged employees of these companies to engage in refusals to load the trucks, of Fili, Boccasini and Koenig. See National Labor Relations Board v. Plumbers Union, 299 F.2d 497 (2d Cir. 1962). An object of this conduct was an object proscribed by the Act, that is to force or require the threatened companies to cease doing business with the owner-operators or with the contractors who hired them.

■■ When application for an injunction is made under Section 10(*l*) the district court does not have the duty of deciding whether an unfair labor practice has been committed. The Board "need only demonstrate that there is reasonable cause to believe that the elements of an unfair labor practice are present." Schauffler for and on Behalf of NLRB v. Local 1291, ILA, 292 F.2d 182, 187 (3d Cir. 1961). See also Douds v. Milk Drivers, etc., Union, 248 F.2d 534, 537–538 (2d Cir. 1957).

The district court erred in holding that, as a matter of law, the suppliers from whom the contractors bought their materials were "primary" objects of the local's activity. The Board, on the evidence presented, could reasonably hold that these companies had no "primary" dispute with the local. They were not doing the hiring of owner-operators to which the local objected. Only by breaking off relations in response to the union's "secondary" pressures could the suppliers have influenced the hiring of owner-operators by the contractors.

Reversed and remanded with instructions to issue the injunction which the Board seeks.