**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 345, BROTHERHOOD OF UTILITY WORKERS OF NEW ENGLAND, INC., and the Brotherhood of Utility Workers of New England, Incorporated, Respondents.**

**No. 79–1142.**

United States Court of Appeals, First Circuit.

Argued Sept. 11, 1979.

Decided Jan. 11, 1980.

Before COFFIN, Chief Judge, Bownes, Circuit Judge, DOOLING,* Senior District Judge.

DOOLING, Senior District Judge.

The National Labor Relations Board seeks enforcement of an amended order against respondents' objection that the failure of the General Counsel to file exceptions to the order of the administrative law judge (ALJ) within the time prescribed by the Board's rule barred the Board from amending its original order adopting the ALJ's recommended order, and on the additional ground that the amended order was made without according respondents an opportunity to present their exceptions to the amendments made by the revised order.

A member of Local 345 of the Brotherhood of Utility Workers initiated the proceeding before the Board on a charge that the Local and the Brotherhood committed an unfair labor practice in disciplining him and other members of the Local for their refusal to honor a picket line established by the International Brotherhood of Electrical Workers. The ALJ after hearing found that the abstention from work of Local 345 members in deference to the IBEW picket line was a work stoppage in breach of the no-strike clause in the contract between Local 345 and the employer, and, therefore, that it was a violation of Section 8(b)(1)(A) of the National Labor Relations Act, 29 U.S.C. § 156(b)(1)(A) (1976), for Local 345 to fine those of its members who crossed the picket line. The ALJ found violations in the local's fining the members who crossed the picket line, in its threatening to raise their dues and condoning threats of bodily harm to them, and in its forgiving for two months the dues of members who honored the picket line and paying their Blue Cross-Blue Shield premiums, and in its raising the dues of all members to pay the Blue Cross-Blue Shield premiums of the members who did not cross the picket line. The ALJ's decision, in this section entitled "The Remedy", provided that:

John D. Burgoyne, Asst. Gen. Counsel, Washington, D. C., with whom John S. Irving, Gen. Counsel, John E. Higgins, Jr., Deputy Gen. Counsel, Robert E. Allen, Acting Associate Gen. Counsel, Elliott Moore, Deputy Associate Gen. Counsel, and James Y. Callear, Atty., Washington, D. C., were on brief, for petitioner.

Joanne F. Goldstein, Boston, Mass., with whom Angoff, Goldman, Manning, Pyle & Wanger, Boston, Mass., was on brief, for respondents.

* Of the Eastern District of New York, sitting by designation.

To remedy the effect of the foregoing conduct, it will be recommended that, in addition to the customary notice, the Respondent Local 345 and the Respondent Brotherhood mail to each member of Local 345, a letter advising that the Respondents were engaged in acts violative of the Act and, in addition, that those who crossed the IBEW picket line are forgiven dues for a period of time equivalent to that for which those who did not cross the picket line were forgiven dues. In addition, it will be recommended that the Union proportionately reimburse each member who crossed the picket line for the amount of money paid by the Respondent Local 345 in Blue Cross-Blue Shield premiums for the period April 18 to June 20. It will also be recommended that the Respondents void the fines of Parker and Label, and return any money paid towards those fines and, finally, expunge from all records of the Union any indication of charges, trials or fines relating to Parker and Label.

The "affirmative action" portion of the ALJ's order directed the respondents to rescind the fines, return any money paid toward the fines, and expunge from all records any indication of charges, trials or fines, and to post a notice to the members summarizing the Board's action. The recommended order did not direct the local to forgive the dues of the members who crossed the picket line for the same period that those who did not cross the picket line were forgiven dues, nor require the local to reimburse each member who crossed the picket line for Blue Cross-Blue Shield premiums she or he paid during the period when the local paid the premiums for those honoring the picket line, nor direct the respondents to mail to each member of Local 345 a letter advising that the respondents were engaged in acts violative of the Act. A footnote in the decision advised the parties that if no exceptions were filed as provided by Section 102.46 of the Rules and Regulations of the Board, 29 C.F.R. § 102.-

46, the findings, conclusions, and recommended order would be adopted as the findings, conclusions and order of the Board, and all objections would be "deemed waived for all purposes." The decision and recommended order were made on September 22, 1977, and corrected by an "Errata" order of the ALJ on October 3, 1977.[1] The order transferring the proceeding to the Board was made on September 22, 1977, and by footnote stated that exceptions to the decision of the ALJ must be received by October 17, 1977. Neither the General Counsel nor respondents' counsel filed exceptions to the decision and recommended order within the twenty days allowed by Section 102.46.

When the General Counsel opened discussions looking toward compliance, respondents pointed out that the recommended order did not include all of the items in the remedy section of the ALJ's decision. General Counsel's office then communicated with the ALJ, and he on October 19, 1977, sent a memorandum to the Board requesting that the proceeding be remanded to him

. . . in order that I may revise my recommended Order to confirm (*sic*) with the provisions stated in the section of my Decision entitled "The Remedy."

When respondents' counsel received a copy of the ALJ's memorandum, on October 25 apparently, she protested to the Board by letter dated October 28 that the ALJ's action appeared to be the result of some *ex parte* communication from the General Counsel's office, and urged denial of the ALJ's request as beyond the Board's authority "under its Rules and Regulations." Respondents argued that the time for filing exceptions to the Board's order had passed, and that Section 102.48 of the Rules and Regulations required the Board automatically to adopt the ALJ's decision and order. Respondents asked, if the Board disagreed with their position, to be allowed to file exceptions since "the revisions to be made . . . seriously affect their respective obligations."

1. Apparently the General Counsel's office had drawn the ALJ's attention to a mistake in the caption of the case.

However, in apparent disregard of the ALJ's October 19 memorandum, the Board, stating that no exception had been filed, had entered its order dated October 27, 1977, "Pursuant to Section 10(c) of the . . Act . . . and Section 102.48 of the . . . Rules," adopting the findings and conclusions of the ALJ, except to modify the interest computation, and ordering the respondents to take the action set forth in the recommended order of the ALJ.

On November 1, 1977, the General Counsel moved the Board to clarify its order or remand the case to the ALJ for correction of his recommended order, stating that his omission from his recommended order of certain of the affirmative recommendations contained in the remedy section of his decision was obviously inadvertent and at variance with the clear intention of his decision. The motion stated in part that:

Errata dated October 3, 1977 was issued by Judge Peterson based on Counsel for the General Counsel's oral communication that the Decision was in error. Despite the Judge's stated intention to correct the Decision, he inadvertently omitted from his recommended Order three affirmative actions to be taken by Respondent which were specified, discussed and recommended.

Respondents opposed the motion for clarification or remand, arguing that the General Counsel had made no showing of the "extraordinary circumstances" required by Section 102.48(d)(1) to obtain reconsideration, rehearing or reopening of a record; respondents noted again that the General Counsel had filed no exceptions to the decision, that the recommended order was not unclear but was explicit, and that the Board had no authority to grant the motion. By footnote respondents moved to be allowed, if the Board disagreed with their argument, "to file exceptions as any changes made in the Order seriously affect their respective obligations." General Counsel by letter of November 8, 1977, advised the Board that, if the Board ruled favorably on his motion, he would have no objection to an extension of time for respondents to file exceptions, and that he considered that only fair and equitable in the circumstances.

On March 13, 1978, the Board entered its "Supplemental Decision and Order". It recited that the Board had "determined that correction of its previous order is warranted," and it amended its earlier order to include the three matters set out in the ALJ's outline of "The Remedy" but omitted from his recommended order and from the original order of the Board. In a footnote the Board disapproved the *ex parte* communications with the ALJ, but found that the interests of justice and statutory policy did not require the Board to deny the General Counsel's motion, saying:

Thus, it appears that it was merely through inadvertence or oversight that the Administrative Law Judge omitted the proper order to remedy the violations found and counsel for the General Counsel was merely informally calling this fact to his attention.

Noting that the administrative law judge no longer had jurisdiction over the matter and that the Board has authority to correct its own orders, it continued:

The Board is not required to act as a "mere rubber stamp", and in the face of a clear, inadvertent error, is compelled to administer the Act so as to accord substantial justice.

The Board rejected respondents' contention that they should be permitted to file exceptions, asserting that respondents were aware of the discrepancy between the recommended remedy and the recommended order and should have known that the Board was empowered to correct such inadvertent errors *sua sponte.*

The Board now moves the court to enforce the amended order. The petition for enforcement must be denied.

Section 10(c) of the Act, 29 U.S.C. § 160(c) (1976), provides that where the evidence is presented before an "examiner" (now an administrative law judge), he

. . . shall issue and cause to be served on the parties to the proceeding a proposed report, together with a recommended order, which shall be filed with

the Board, and if no exceptions are filed within twenty days after service thereof upon such parties, or within such further period as the Board may authorize, such recommended order shall become the order of the Board and become effective as therein prescribed.

Sections 102.46(a) and 102.48 of the Board's Rules and Regulations, Series 8, 29 C.F.R. §§ 102.46(a), .48, substantially repeat the language of the statute; Section 102.46(e) authorizes any party who has not previously filed exceptions to file cross-exceptions within ten days (or such further period as the Board allows) from the last date on which exceptions may be filed. Section 10(e) of the Act, 29 U.S.C. § 160(e), empowers the Board to petition the courts of appeals to enforce its orders, and provides, in part, that in such enforcement proceedings:

> No objection that has not been urged before the Board . . . shall be considered by the court, unless the failure or neglect to urge such objection shall be excused because of extraordinary circumstances.

The Board's principal argument is that the order should be enforced because respondents' failure to except to the ALJ's decision and recommended order bars them from now urging any objections in this court; it is argued that respondents could and should have anticipated that the Board would conform its order to the "Remedy" paragraph of the ALJ's decision, and should have filed exceptions to the remedy provision. Respondents contend that the Board had no authority to amend the first order since it had, under Section 10(c), automatically become the order of the Board when no exceptions were filed to the ALJ's decision, and that in any event the Board should have allowed respondents time to file exceptions to the supplemental decision and order, since it materially increased their affirmative obligations over those imposed by the original order.

The case was decided by the Board and has been argued in this court on too high a ground for its modest facts. Neither the powers of the Board to correct and modify its orders, nor the validity of the exception rule, Section 102.46(a), nor the normal finality of effect attaching to a failure to except under Section 102.48 is called in question. The question is, very simply, whether the manner in which the Board proceeded in amending its order adequately took account of the respondents' interest in being heard on the changes brought about by the amended order.

The decision of the ALJ set forth explicit findings of facts and concluded that respondents had violated Section 8(b)(1)(A) by certain specified acts. The "Remedy" paragraph plainly says that it would be recommended that, in addition to the customary notice, respondents be required to mail a letter to each member of the local advising that the respondents had engaged in acts violative of the Act, and that those who crossed the picket line were forgiven dues for the same period for which those who honored the picket line were forgiven dues, and, further, it would be recommended that the local proportionately reimburse each member who crossed the picket line for the amount of money it paid for Blue Cross-Blue Shield premiums for those who honored the picket line. None of these items was included in the ALJ's recommended order.

The difference between "Remedy" and "Order" is very obvious, but it is by no means obvious upon inspection of the decision that it is the "Remedy" paragraph and not the recommended "Order" that represents the ALJ's final conclusion. Perhaps few reading the decision through the passage preceding the "Remedy" paragraph would be surprised at the terms of that paragraph, and it may be that many would be surprised if the "Remedy" section had contained only the affirmative action provisions contained in the recommended "Order." That is not enough to foreclose respondents who have, perhaps foolishly, withheld their exceptions to the decision and recommended order because they were prepared to accept the strong censure of the decision and the requirements of the recommended order so long as no financial burden

was imposed on them—and the membership—other than returning any fines that may have been collected. Perfect even-handedness requires that the Board make no more of the respondents' failure to file exceptions than it might have made of the General Counsel's failure to file exceptions. The Board may well consider it important to protect its power under Section 10(d) to modify or set aside its order "upon reasonable notice and in such manner as it shall deem proper" at any time until the record is filed in a court. But where, as here, the modification imposes additional and material burdens on respondents, both sides should be heard on the propriety of additional relief.

The Board must have the power to make corrective amendments in its orders, and had the amendment in this case been directed to correcting what was beyond peradventure a mechanical mistake that self-evidently could not have been deliberative action, then summary amendment would have been appropriate. Here, however, where the text is not self-correcting to the exclusion of every rational doubt, any procedure looking toward amendment must take account of the right of affected interests to be heard on the propriety of the amendment. Perhaps no bright line divides the cases open to peremptory amendment and those requiring a deliberative procedure in which affected interests are given an opportunity to be heard, but, whatever the dividing line, the case in which the affirmative duties imposed by an order are materially increased falls on the side requiring that the affected interests be heard before the amendment is made.

Undeniably it would have been far better if the respondents had brought forward the grounds of substance that they wished to present in opposition to the amendment, if any grounds there were, and had not simply clung to their point that the Board was powerless to amend its order. Instead, in their opposition to the General Counsel's motion for clarification and in their own motion for reconsideration of the supplemental decision and order, respondents merely asked for leave to file exceptions.

During oral argument it was made clear by respondents' counsel that respondents have sought to file exceptions, or something of equivalent legal effect, limited to the changes made by the Board's amended order. The General Counsel, as noted earlier in this opinion, advised the Board that there was no objection to extending respondents' time to do so. To so much relief respondents are entitled.

What is here decided is a very narrow point indeed: where, as in this certainly infrequent incident, the Board considers that an order must be amended so as materially to increase the burden or diminish the advantage of the order, the party affected by the proposed change must be given an adequate opportunity by exception or otherwise to present objections to the proposed amendment. This, for the self-evident reason that the party affected by the proposed change in the order may, at minimum, have been influenced to forego exceptions to the relief granted by the original order solely because it did not impose the duty or withhold the relief embraced in the proposed amendment. In view of the position taken by respondents it is not necessary to consider in this case whether in other circumstances the only fair remedy might be revival of the right to except to the entirety of the decision.

The Board's argument that the respondents are barred by Section 10(e) from raising in this court objections not urged before the Board does not meet respondents' case: respondents, by their letter of October 28, 1977, by their "Opposition to General Counsel's Motion for Clarification of Order or Remand", and by their "Motion for Reconsideration of the Supplemental Decision and Order" both objected to the Board's acting on the General Counsel's motion despite the failure to file exceptions and sought an opportunity to file exceptions to the amendments the General Counsel sought and obtained. The denial of those objections, presented to the Board by respondents promptly and in the only manner that the Board's course left open to them, is the sole subject matter of the present appeal. The

case is not within *N. L. R. B. v. Allied Products Corp., Richard Bros. Div.*, 548 F.2d 644, 653 (6th Cir. 1977); there, the court pointed out, the respondent "never offered the Board an opportunity to rule on [its] contentions" that "the Board was barred by its own regulations, 29 C.F.R. §§ 102.46(b), 102.46(h), 102.48(e), from expanding a remedy ordered by the ALJ when no exceptions had been taken to it." The "failure" of respondents to file exceptions to the ALJ's decision and recommended order is not involved: respondents could not be expected to except to that which favored them; *pro tanto* they had prevailed. *Cf. N. L. R. B. v. Local 138, Int'l Union of Operating Engineers*, 293 F.2d 187, 191–192 (2d Cir. 1961) ("In all save form the Union was the prevailing party before the Examiner; there was no occasion for it to except to adverse findings which did not affect his favorable recommendation."). Nor is *N. L. R. B. v. WTVJ, Inc.*, 268 F.2d 346, 348 (5th Cir. 1959), in point; the court affirmed the Board which had supported the trial examiner's decision upon a different analysis of the evidence and significantly different findings of fact, *see WTVJ, Inc.*, 120 N.L.R.B. 1180 (1958); it does not appear that the Board modified the relief recommended by the trial examiner, nor does it appear that the respondent moved the Board to reconsider its determination. *WTVJ, Inc.* has been understood as illustrating the proposition that, "The Board is free to use its own reasoning and is not bound by that of the trial examiner." *N. L. R. B. v. Duncan Foundry & Machine Works, Inc.*, 435 F.2d 612, 620 (7th Cir. 1970). *See also N. L. R. B. v. United Shoe Machinery Corp.*, 445 F.2d 633, 634 (1st Cir. 1971) (respondent not helped by Board decision that the Regional Director's reasoning was wrong if his result was correct). *N. L. R. B. v. Hamel Leather Co.*, 135 F.2d 71 (1st Cir. 1943), cited by the Board, was decided at a time when the Act and the Board's procedural rules and regulations did not approach their present form. *See* Sections 10(b) and (c), 49 Stat. 453–54 (1935); 29 C.F.R. § 202.32 *et seq.* (Supplement 1941); 29 C.F.R. § 202.32 *et seq.* (Supplement 1943). The trial examiner's "intermediate report" at that date was not automatically adopted if no exceptions were filed.

The "Supplemental Decision and Order" of the Board is modified by deleting from it so much as directs the substitution of paragraphs (d) through (i) of the Board's "Amended Order" for paragraphs 2(d) through (f) of the Board's Order of October 27, 1977, adopting the decision of the administrative law judge, and the proceeding is remanded to the Board for the entry of such supplemental order as it finds appropriate after the parties have been given an opportunity to be heard upon their exceptions and cross-exceptions, if any, to the amendment of the order.

