# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued November 16, 2023          Decided March 1, 2024

No. 22-1287

J.G. KERN ENTERPRISES, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

———

Consolidated with 22-1293

———

On Petition for Review and Cross-Application
for Enforcement of an Order of
the National Labor Relations Board

———

*Maurice Baskin* argued the cause for petitioner. With him on the briefs was *Emily Carapella*.

*Aaron Solem* and *Glenn M. Taubman* were on the brief for *amicus curiae* National Right to Work Legal Defense Foundation, Inc. in support of petitioner.

*Gregoire F. Sauter*, Attorney, National Labor Relations Board, argued the cause for respondent. With him on the brief were *Jennifer A. Abruzzo*, General Counsel, *Peter Sung Ohr*, Deputy General Counsel, *Ruth E. Burdick*, Deputy Associate

General Counsel, *David Habenstreit*, Assistant General Counsel, and *Elizabeth A. Heaney*, Supervisory Attorney.

Before: PILLARD and CHILDS, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Senior Circuit Judge* EDWARDS.

EDWARDS, *Senior Circuit Judge*: It is well settled that, after a union has been certified by the National Labor Relations Board ("Board" or "NLRB") to represent employees in an appropriate bargaining unit, the union enjoys "a conclusive presumption of majority status for one year." *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 37 (1987). This policy, denominated the "certification year bar," "promotes stability in collective-bargaining relationships, allowing a union to concentrate on obtaining and fairly administering a collective-bargaining agreement without worrying about the immediate risk of decertification, and relieving the employer of any temptation . . . to avoid good-faith bargaining in an effort to undermine union support." *Veritas Health Servs., Inc. v. NLRB*, 895 F.3d 69, 79 (D.C. Cir. 2018) (quotations omitted). Thus, it is understood that, when an employer "take[s] from the Union a substantial part of" the first 12 months after certification "largely through its refusal to bargain," the Board may remedy the "inequit[y]" by extending the certification year. *Mar-Jac Poultry Co.*, 136 N.L.R.B. 785, 787 (1962). This case involves an application of the certification year bar.

On October 3, 2018, the Board certified Local 228, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), AFL-CIO ("Union") as the collective-bargaining representative for a unit of employees at a manufacturing facility operated by J.G.

Kern Enterprises, Inc. ("Company"). However, despite the Union's repeated requests to bargain after its certification, the Company failed to meet with Union agents until almost three months after the start of the certification year. When the parties finally commenced negotiations, the Company refused to provide the Union with requested information related to employees' benefit plans, thus effectively foreclosing any meaningful bargaining on this matter. By the end of the certification year, the parties had failed to reach agreement on the terms of a collective-bargaining contract. About two months after the certification year expired, the Company withdrew recognition from the Union, purportedly because the Union had lost its majority status.

The Union filed unfair labor practice charges with the NLRB, and the Board's General Counsel issued consolidated Complaints against the Company. After a hearing before an Administrative Law Judge ("ALJ"), the Board found that the Company had violated Sections 8(a)(1) and (5) of the National Labor Relations Act ("Act"), 29 U.S.C. § 158(a)(1), (5), by: (1) delaying bargaining for nearly three months after the start of the certification year; (2) refusing to consider any proposal for a Union-administered benefit plan; (3) refusing to furnish information to the Union regarding the Company's existing employee benefit plans; and (4) withdrawing recognition from the Union during the extended certification year. *See J.G. Kern Enters., Inc.*, 371 N.L.R.B. No. 91 (Apr. 20, 2022) ("*Board Decision*"), *reprinted in* Joint Appendix ("J.A.") 277-307. The Board, *inter alia*, ordered the Company to cease and desist from the unfair labor practices, extended the certification year by six months from the date good-faith bargaining resumed, and required the parties to bargain during that period. *Id.* at 8-9. The Board then denied the Company's motion for reconsideration.

In its petition for review before this court, the Company challenges all of the Board's findings in connection with the contested unfair labor practices. The Company's principal arguments to this court are: first, that the Board erred in finding an unlawful withdrawal of Union recognition based on a retroactive extension of the original certification year; and, second, that the Board had no legal basis to order the Company to bargain with the Union for an additional six months.

We find no merit in the Company's petition for review. Substantial evidence supports the Board's findings that the Company committed the unfair labor practices as alleged. The Company contends that, in finding an unlawful withdrawal, the Board mistakenly followed the remedial rule set forth in *Whisper Soft Mills, Inc.*, 267 N.L.R.B. 813 (1983), rather than the approach used in *Master Slack Corp.*, 271 N.L.R.B. 78 (1984). We disagree. The Board's General Counsel raised both remedial approaches in pursuing the Complaints against the Company. Furthermore, the remedial approaches taken in *Whisper Soft* and *Master Slack* serve different purposes and do not conflict. Therefore, the Board was free to choose which legal theory to rely on in addressing the unfair labor practice charges against the Company. Finally, we hold that the Board acted within its discretion when it ordered an extension of the certification year and required the parties to bargain to remedy the Company's unfair labor practices. An extension of the certification year is a "standard remedy" when an employer refuses to bargain for a significant part of that year. *Veritas Health*, 895 F.3d at 80. Accordingly, we deny the Company's petition for review and grant the Board's cross-petition for enforcement of its order.

## I. BACKGROUND

### A. Statutory Background

"The object of the National Labor Relations Act is industrial peace and stability, fostered by collective-bargaining agreements providing for the orderly resolution of labor disputes between" employees and employers. *Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 785 (1996). In support of these ends, Section 8(a)(5) of the Act generally makes it an unfair labor practice for an employer to refuse to bargain in good faith with the lawful representative of its employees. 29 U.S.C. § 158(a)(5). An employer who violates Section 8(a)(5) also violates Section 8(a)(1) of the Act, which makes it an unfair labor practice for an employer "to interfere with, restrain, or coerce employees in the exercise of [their statutory] rights." *Id.* § 158(a)(1); *see also Regal Cinemas, Inc. v. NLRB*, 317 F.3d 300, 309 n.5 (D.C. Cir. 2003). Under Section 10(c) of the Act, the Board has remedial authority to order a violator "to take such affirmative action . . . as will effectuate the policies" of the Act. 29 U.S.C. § 160(c).

### B. Factual and Procedural History

On October 3, 2018, the Board certified the Union as the lawful bargaining agent for a unit of employees at the Company's manufacturing facility for automotive parts in Sterling Heights, Michigan. On October 15, 2018, Union officials contacted the Company's representative, Jonathan Sutton, offering to begin negotiations "anytime" at Sutton's "earliest convenience." J.A. 97. Sutton indicated that he could meet with the Union on November 5 to 7 or November 26 to 28. The Union promptly replied the next day that it was "ready and willing to meet" on all those dates. J.A. 94. The Union requested the first block of dates available, November 5 to 7,

indicated that they could "go from there," and asked where to meet. J.A. 95. Sutton never responded. About two weeks later, the Union again inquired about the meeting location. Again, Sutton failed to answer.

On November 5, 2018, the first day of scheduled negotiations, Sutton emailed the Union announcing he could no longer meet in November. He stated that he was in Guam for another client and also had just sold his house in Houston. He offered to "ask someone else to step in and fill [his] spot." J.A. 116. The Union replied within half an hour on the same day, saying they "need[ed] to get the ball rolling," that "it ma[de] no difference" with whom the Union negotiated, and that the Union would file charges with the NLRB if the Company failed to set a negotiation date by November 8. J.A. 115. Noting that it had "waited over a month to start the process," the Union made it clear that it could not "wait any longer" and "look[ed] forward to hearing from someone, whoever that may be." *Id.* Later in November, the Company designated someone to replace Sutton, but no meetings took place.

On November 27, 2018, the Union filed an unfair labor practice charge with the Board, accusing the Company of failing to bargain in good faith by continually postponing negotiations. The same day, the Union sent a letter to the Company proposing 15 bargaining dates between December 4 and 20. The Company did not offer to schedule any bargaining sessions. Sutton later testified that he could not meet in December because of his house sale, and because "December is a very difficult month to meet, anyway." J.A. 30. On January 10, 2019, nearly three months after the start of the certification year, the parties finally met to begin bargaining.

On February 21, 2019, the Board's General Counsel issued a Complaint against the Company, alleging that it failed to bargain in good faith with the Union. The Complaint requested that the Board extend the certification year. J.A. 56 at ¶ 2(b) (citing *Mar-Jac Poultry Co.*, 136 N.L.R.B. 785 (1962)).

Once the parties finally commenced bargaining in January 2019, the Union requested information regarding the cost of various employee benefits provided by the Company. The Union explained that it needed this information to propose alternative, Union-administered benefits. In response, the Company provided information on the costs to employees of various plan options, rather than the cost to the Company as the Union requested. When the Union followed up, the Company refused to provide any more information. The Company's representative, Sutton, emailed the Union to say: "[T]here is a limit to the information we will be providing . . . . In light of as much, there seems [to be] no need for [the Union] to put further effort into working up a proposal for union provided benefits. We will stick with the present plan." J.A. 100. After more unsuccessful back-and-forth, the Union filed a second unfair labor practice charge with the Board on July 29, 2019, alleging that the Company had failed to furnish requested information.

On October 8, 2019, the Board's General Counsel issued a consolidated Complaint against the Company alleging, as additional violations, that the Company unlawfully refused to consider any proposal for Union-administered benefit plans, and that the Company unlawfully refused to furnish relevant information. As with the first Complaint, the General Counsel's consolidated Complaint also requested that the Board remedy the violations by extending the certification year. J.A. 69 at ¶ 2(b) (citing *Mar-Jac Poultry Co.*, 136 N.L.R.B. 785 (1962)).

The parties did not agree on a collective bargaining contract by the end of the certification year. Less than two months after the certification year expired, on November 25, 2019, the Company withdrew recognition of the Union and refused to continue bargaining. Company officials claimed that they had received a petition signed by a majority of the employees in the bargaining unit indicating the employees no longer wished to be represented by the Union. In response, the Union filed a third unfair labor practice charge alleging that the Company had unlawfully withdrawn recognition of the Union.

On June 22, 2020, the Board's General Counsel issued a second consolidated amended Complaint. Incorporating all of the Union's charges, the Complaint alleged that the Company violated Sections 8(a)(1) and (5) of the Act by: (1) refusing to meet and bargain in good faith; (2) refusing to bargain over Union-administered benefit plans; (3) failing to respond to a request for information about employee benefits; and (4) withdrawing recognition of the Union. J.A. 77, 79 at ¶¶ 9, 10, 14, 15.

The General Counsel presented two theories to the ALJ to support the claim of unlawful withdrawal of Union recognition. First, the General Counsel argued that the Company's withdrawal was unlawful under the analysis adopted in *Master Slack Corp.*, 271 N.L.R.B. 78 (1984), which considers whether an employer's unfair labor practice caused the loss of union support. *See* J.A. 199. Second, the General Counsel argued, in the alternative, that if the Board granted an extension of the certification year of greater than 53 days – i.e., the number of days from the certification-year expiration after which the Company withdrew recognition – "then [the Company] unlawfully withdrew recognition during the [extended] certification year notwithstanding whether the factors in *Master Slack* have been met." J.A. 203. This second theory of

unlawful withdrawal is consistent with the approach followed by the Board in cases such as *Whisper Soft Mills, Inc.*, 267 N.L.R.B. 813 (1983).

On October 6, 2020, the ALJ found merit in all of the unfair labor practice charges raised by the General Counsel. J.A. 229-30. The ALJ applied the approach set forth in *Master Slack* and determined that the withdrawal of recognition was unlawful because the Company's unfair labor practices had caused the Union to lose its majority status. J.A. 227-29.

On April 20, 2022, the Board accepted the ALJ's factual findings. However, the Board found it unnecessary to determine whether the Company's unfair labor practices had caused the Union to lose its majority status. Rather, the Board relied on the General Counsel's alternative theory of liability, as exemplified by the approach followed in *Whisper Soft*, in determining the appropriate remedy for the unfair labor practices committed by the Company. Following *Whisper Soft* and other like cases, the Board found that the unfair labor practices committed during the original certification year supported extension of the certification year as well as invalidation of the Company's withdrawal of recognition during that extension. *See Board Decision*, at 2-3. To remedy the unfair labor practices, the Board, *inter alia*, ordered the Company to cease and desist from violating the Act; extended the certification year by six months from the date that good-faith bargaining resumed; and required the parties to bargain for 40 hours a month, for at least eight hours per session, until they reach an agreement or good-faith impasse. *Id.* at 8-9. The Board then denied the Company's motion for reconsideration. *See* J.A. 308-12. The Company now petitions this court for review, and the Board cross-petitions for enforcement of its order.

## II. ANALYSIS

### A. *Jurisdiction and Standard of Review*

The court has jurisdiction over this appeal pursuant to Sections 10(e) and (f) of the Act. 29 U.S.C. § 160(e), (f). This court's role in reviewing a Board decision is "limited." *Wayneview Care Ctr. v. NLRB*, 664 F.3d 341, 348 (D.C. Cir. 2011). We must uphold the Board's judgment unless "the Board's findings are not supported by substantial evidence, or . . . the Board acted arbitrarily or otherwise erred in applying established law to the facts of the case." *Id.* (quoting *Mohave Elec. Coop., Inc. v. NLRB*, 206 F.3d 1183, 1188 (D.C. Cir. 2000)). To determine whether evidence is substantial, this court must "ask whether a reasonable mind might accept a particular evidentiary record as adequate to support a conclusion." *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999) (quotation marks omitted). "[T]he Board is to be reversed only when the record is 'so compelling that no reasonable factfinder could fail to find' to the contrary." *United Steelworkers of Am. v. NLRB*, 983 F.2d 240, 244 (D.C. Cir. 1993) (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 484 (1992)).

### B. *The Company's Unfair Labor Practices Committed During the Original Certification Year*

The Board found that, during the original certification year, the Company violated Sections 8(a)(1) and (5) of the Act by: (1) "delaying bargaining for a period of almost three months at the start of the certification year"; (2) "refusing to furnish requested employer cost information regarding the existing benefit plans for unit employees"; and (3) "notif[ying] the Union via email that it would not consider any proposal for a union-administered benefit plan and would stick with its

present benefit plan." *Board Decision*, at 1. Although the Company challenges these findings, there is no serious dispute that the record supports the Board's determinations.

Substantial evidence supports the Board's first finding that the Company unlawfully delayed negotiations. An employer's refusal to bargain with a union during the certification year "is *per se* an unfair labor practice under §§ 8(a)(1) and 8(a)(5) of the [Act]." *NLRB v. Curtin Matheson Sci., Inc.*, 494 U.S. 775, 778 (1990). Here, following the Union's certification on October 3, 2018, the Union promptly requested bargaining on October 15, 2018. However, as the ALJ found, the Company responded "by cancelling bargaining dates in November and then making a blanket refusal to bargain at all in December." *Board Decision*, at 25. It was not until after the Union filed an unfair labor practice charge that the Company agreed to its first bargaining session on January 9, 2019, almost three months after the start of the certification year. In other cases, the Board has found delays of similar or even shorter lengths to be inconsistent with the duty to bargain. *See, e.g.*, *Ne. Ind. Broad. Co.*, 88 N.L.R.B. 1381, 1390-91 (1950) (finding five-week delay unreasonable); *Fruehauf Trailer Servs., Inc.*, 335 N.L.R.B. 393, 393 (2001) (finding three-month delay unreasonable).

Substantial evidence also supports the Board's second finding that the Company violated Sections 8(a)(1) and (5) of the Act by failing to bargain over Union-administered benefits. "[A] refusal to bargain on a mandatory subject of bargaining" may be challenged as an unfair labor practice. *Loc. Union No. 189, Amalgamated Meat Cutters v. Jewel Tea Co.*, 381 U.S. 676, 685 (1965). Under the Act, "mandatory subjects of collective bargaining include," as relevant here, "insurance benefits for active employees." *Allied Chem. & Alkali Workers v. Pittsburgh Plate Glass Co.*, 404 U.S. 157, 159 (1971). The

Union requested information from the Company regarding the cost the Company incurred to provide employee benefits, explaining that the Union intended to "cost the package" and "provide the company with an option" to administer insurance through a Union benefit plan. J.A. 100. In reply, the Company declared there was "no need for [the Union] to put further effort into working up a proposal for union provided benefits," because the Company would "stick with the present plan." *Id.* The record thus plainly supports the Board's determination that the Company impermissibly foreclosed bargaining over a mandatory subject.

Finally, substantial evidence supports the Board's third finding that the Company refused to provide requested information relevant to mandatory subjects of bargaining. The duty to bargain collectively under the Act "includes a duty to provide relevant information needed by a labor union for the proper performance of its duties." *Detroit Edison Co. v. NLRB*, 440 U.S. 301, 303 (1979). Information considered "presumptively relevant to collective bargaining" includes matters "related to . . . benefits" of represented employees. *Country Ford Trucks, Inc. v. NLRB*, 229 F.3d 1184, 1191 (D.C. Cir. 2000); *see also The Nestle Co.*, 238 N.L.R.B. 92, 94 (1978) (finding company committed unfair labor practice by "refusing to furnish the [u]nion with the requested information concerning claims and premiums" the company paid for employees' health insurance). Relevant information must be disclosed unless the employer provides a "valid countervailing interest." *Oil, Chem. & Atomic Workers Loc. Union No. 6-418 v. NLRB*, 711 F.2d 348, 360 (D.C. Cir. 1983). Here, the Company refused repeated requests for information on the cost to the Company of its benefit plans, asserting that "[c]ost information will not be shared." J.A. 106. In this case, the ALJ found, and the Board agreed, that the Company "provided no explanation other than its own obstinacy" for "refusing to

provide most of this presumptively relevant cost information." *Board Decision*, at 27; *see also id.* at 1.

In sum, substantial evidence clearly supports the Board's findings that, during the original certification year, the Company committed three unfair labor practices and impaired the Union's ability to bargain during that protected year.

### C. The Company's Withdrawal of Union Recognition After the Original Certification Year

The primary contention on appeal concerns the Board's fourth finding, that the Company unlawfully withdrew Union recognition and refused to bargain less than two months after the expiration of the original certification year. The Board reasoned that the unfair labor practices committed during the original certification year warranted an extension of the certification year by at least nearly three months, the length of time that the Company delayed bargaining during the original certification year. *See id.* at 3. Therefore, the Board concluded that the Company's withdrawal of recognition less than two months after the original certification year, occurring during the extended certification year, violated the Company's duty to bargain in good faith and constituted an unfair labor practice under Sections 8(a)(1) and (5) of the Act. The Board's reasoning is eminently reasonable and supported by longstanding precedent.

It is well established that, "after a union has been certified by the Board as a bargaining-unit representative, it usually is entitled to a conclusive presumption of majority status for one year following the certification." *Fall River*, 482 U.S. at 37. An employer must bargain in good faith during these first 12 months and cannot withdraw recognition of the union, even if the union allegedly loses majority support through no fault of

the employer. *See Auciello Iron Works*, 517 U.S. at 786*; Brooks v. NLRB*, 348 U.S. 96, 98-99 (1954). As explained above, this certification-year bar "enable[s] a union to concentrate on obtaining and fairly administering a collective-bargaining agreement without worrying" about the immediate risk of decertification. *Fall River*, 482 U.S. at 38. It also "remove[s] any temptation on the part of the employer to avoid good-faith bargaining in the hope that, by delaying, it will undermine the union's support among the employees." *Id.* After the certification year expires, "the presumption of majority status becomes a rebuttable one." *Auciello Iron Works*, 517 U.S. at 786.

When an employer has, "largely through its refusal to bargain, taken from the Union a substantial part of the period when Unions are generally at their greatest strength[,] the 1-year period immediately following the certification," the Board may remedy the "inequit[y]" by extending the certification year. *Mar-Jac*, 136 N.L.R.B. at 787; *see also Loc. Union No. 2338, IBEW v. NLRB*, 499 F.2d 542, 544 & n.3 (D.C. Cir. 1974) (per curiam) (noting with approval the *Mar-Jac* remedy). The Board, with this court's approval, has long treated extension of the certification year as the "standard remedy" for an employer's refusal to bargain in good faith during a union's first 12 months as the employees' representative. *Veritas Health*, 895 F.3d at 80 (citing *Dominguez Valley Hosp.*, 287 N.L.R.B. 149, 149 (1987)).

The Board may grant an extension of the certification year when the employer or an employee files a petition with the Board seeking to decertify the Union, and the Board determines that the employer failed to bargain in good faith for the full certification year. *See, e.g.*, *Mar-Jac*, 136 N.L.R.B. at 787 & n.6 (dismissing decertification petition filed after original certification year had expired and extending certification year

by six months because employer had refused to bargain for that length of time). The Board has also granted certification-year extensions where the employer unilaterally withdraws recognition from the union during the certification year, and the union files an unfair labor practice charge against the employer in response. *See, e.g.*, *Dominguez Valley Hosp.*, 287 N.L.R.B. at 151 (extending certification year by six months because employer refused to bargain during part of the certification year and prematurely withdrew union recognition).

In some cases, an employer withdraws union recognition during the certification year. *See, e.g.*, *id.*; *Veritas Health*, 895 F.3d at 80; *Bryant & Stratton Bus. Inst., Inc. v. NLRB*, 140 F.3d 169, 186 (2d Cir. 1998). In other cases, like the instant matter, an employer withdraws recognition of the union shortly after the certification year's expiration. *See, e.g.*, *Whisper Soft*, 267 N.L.R.B. at 816; *New Madrid Nursing Center*, 325 N.L.R.B. 897, 902 (1998), *enf'd*, 187 F.3d 769 (8th Cir. 1999). The Board must bar the withdrawal if it occurs during the unextended certification year. And, where the Board finds that the employer failed to bargain in good faith for a significant portion of the certification year, it can remedy the inequity by extending the certification year and barring withdrawal during the extension period. *See, e.g.*, *Veritas Health*, 895 F.3d at 80; *Bryant & Stratton*, 140 F.3d at 186; *Whisper Soft*, 267 N.L.R.B. at 816; *New Madrid*, 325 N.L.R.B. at 902.

In this case, the Board relied in part on *Whisper Soft* and *New Madrid* to find that the Company unlawfully withdrew recognition of the Union during the extended certification year. *See Board Decision*, at 3. In *Whisper Soft*, the employer refused to bargain for four and a half months of the certification year and then withdrew recognition within a month after the certification year expired. *Whisper Soft*, 267 N.L.R.B. at 816.

The Board held that the employer's unlawful refusal to bargain entitled the union to an extension of the certification year by at least four and a half months from the date that the certification year expired. *Id.* The Board held that the employer's withdrawal of recognition before the extended certification year expired constituted a violation of the Act. *Id.*

Similarly, the Board in *New Madrid* found an employer's withdrawal the day after the end of the certification year unlawful, because the employer's conduct during the year precluded "a full year of bargaining" by 10 days. *New Madrid*, 325 N.L.R.B. at 902. The ALJ (whose findings and conclusions the Board adopted) explained that whether there existed a causal relationship between the employer's conduct and the loss of majority status "has no impact on [the] decision." *Id.* Rather, because "[t]he Union was entitled to 1 year of good-faith bargaining from the date of certification," "an extension of the certification year by at least 10 days . . . [was] warranted." *Id.* Thus, the Board concluded that the withdrawal of recognition impermissibly occurred before the expiration of the extended certification year. *Id.* (citing *Whisper Soft*, 267 N.L.R.B. at 816).

*Whisper Soft* and *New Madrid* are directly on point and support the Board's disposition of this case. The extension ensures that the Union in fact receives one full year of good-faith bargaining with the employer. In this case, the Company does not contest that, under *Whisper Soft* and *New Madrid*, its withdrawal of Union recognition two months after the certification year would be unlawful, where it committed unfair labor practices during the certification year that impeded bargaining for longer than two months. Rather, the Company contends that the Board was required to apply *Master Slack Corp.*, 271 N.L.R.B. 78 (1984). The Company argues that *Master Slack* superseded *Whisper Soft*, and also that *New*

*Madrid* was wrongly decided because it applied *Whisper Soft* instead of *Master Slack*.

Contrary to the Company's view, *Master Slack* does not replace the well-established line of precedents instructing that when an employer impedes the union's ability to bargain during the certification year, the Board may remedy the inequity by extending the year. *See, e.g.*, *Veritas Health*, 895 F.3d at 80; *Bryant & Stratton*, 140 F.3d at 186; *Loc. Union No. 2338*, 499 F.2d at 544; *New Madrid*, 325 N.L.R.B. at 902; *Dominguez Valley Hosp.*, 287 N.L.R.B. at 151; *Whisper Soft*, 267 N.L.R.B. at 816; *Mar-Jac*, 136 N.L.R.B. at 787.

Instead, *Master Slack* offers another, independent legal theory for determining the legality of an employer's withdrawal of recognition. Importantly, *Master Slack* did not concern certification-year principles. In *Master Slack*, an employer withdrew recognition from the union eight years after the union's certification, following the expiration of a collective-bargaining agreement. *See Master Slack*, 271 N.L.R.B. at 79 & n.5, 85. The Board articulated a four-factor test to determine whether the employer's unfair labor practices tainted the union's loss of majority status. The test consists of the following elements:

(1) [t]he length of time between the unfair labor practices and the withdrawal of recognition; (2) the nature of the illegal acts, including the possibility of their detrimental or lasting effect on employees; (3) any possible tendency to cause employee disaffection from the union; and (4) the effect of the unlawful conduct on employee morale, organizational activities, and membership in the union.

*Id.* at 84; *see also Tenneco Auto., Inc. v. NLRB*, 716 F.3d 640, 648 (D.C. Cir. 2013) (noting this court's endorsement of *Master Slack's* four-factor test).

The approaches taken by the Board in *Master Slack* and *Whisper Soft/New Madrid* serve different purposes. *Whisper Soft/New Madrid* guarantees that a union receives one full year of good-faith bargaining after certification. Thus, if the employer commits an unfair labor practice during the certification year that impairs the union's ability to bargain, the Board may remedy the inequity by extending the certification year. In comparison, *Master Slack* concerns whether an employer caused a union's loss of majority support, and can be applied to analyze withdrawals of recognition without reference to the certification year. *See, e.g.*, *Tenneco*, 716 F.3d at 643, 648.

The Company points out that the Board has at times applied *Master Slack* in cases in which the unfair labor practices were committed during the certification year, when it presumably could have applied the approach followed in *Whisper Soft/New Madrid*. In these cases, the Board decided whether to invalidate an employer's withdrawal of union recognition shortly after the end of the original certification year based on whether the employer's unfair labor practices caused the union's loss of majority support. *See* Final Brief ("Br.") of Petitioner 15-16 (citing *Denton Cnty. Elec. Coop., Inc.*, 366 N.L.R.B. No. 103, at 2-3 (2018), *enf'd in relevant part*, 962 F.3d 161 (5th Cir. 2020); *Champion Home Builders Co.*, 350 N.L.R.B. 788, 788 (2007); *Garden Ridge Mgmt.*, 347 N.L.R.B. 131, 134 (2006); *Tritac Corp.*, 286 N.L.R.B. 522, 537-40 (1987)). The Company argues that the Board's reliance on *Master Slack* in these cases indicates that the Board has overruled *Whisper Soft/New Madrid*, or impermissibly ignored

without explanation a square conflict between those cases and *Whisper Soft/New Madrid*. We disagree.

The decisions the Company highlights do not say anything about *Whisper Soft*/*New Madrid*. As the Board here notes, neither the General Counsel nor the parties in those cases raised that theory with the Board. *See Board Decision*, at 5. And the Board itself never stated in any of those cases that *Master Slack* superseded or otherwise modified *Whisper Soft/New Madrid*. Furthermore, as discussed above, *Master Slack* and *Whisper Soft/New Madrid* pose no irreconcilable conflict, as they provide distinct ways to assess a union's loss of representative status. Even if there are cases in which both theories might apply, this provides no basis for us to invalidate *Whisper Soft/New Madrid*. The General Counsel and the Board may use any available theory deemed appropriate to assess unfair labor practice allegations. *See, e.g.*, *NLRB v. WTVJ, Inc.*, 268 F.2d 346, 348 (5th Cir. 1959) (enforcing Board decision that found violation based on a theory of wrongdoing different from the theory relied upon by the ALJ); *Jefferson Electric Co.*, 274 N.L.R.B. 750, 750-51 (1985), *enf'd.*, 783 F.2d 679 (6th Cir. 1986) (affirming ALJ's conclusion but on different grounds). We can find no relevant case law suggesting that a Board's decision to use one legal theory implies the rejection of another, independent legal theory.

The Company argues that the certification-year principles in *Whisper Soft* hold no precedential value because the Ninth Circuit vacated and reversed the Board's decision. *See* Final Br. of Petitioner 32-35 (citing *Whisper Soft Mills, Inc. v. NLRB*, 754 F.2d 1381, 1388 (9th Cir. 1984)). We disagree. The Ninth Circuit simply rejected the Board's holding that the Company had a duty to bargain. *Whisper Soft*, 754 F.2d at 1387. The Ninth Circuit did not, however, criticize the underlying principle applied by the Board that an unlawful bargaining

delay may warrant extension of the certification year. *See id.* (noting that the Board extended the certification year to remedy unlawful delay, but that "[s]ince . . . [the employer's] method of making a wage proposal did not result in any illegality, the certification year should not have been extended"). Nowhere in its decision did the Ninth Circuit reject the longstanding principle that the Board may extend the certification year if the employer unlawfully impairs bargaining during that year.

Finally, the Company protests that its due process rights have been violated because the General Counsel did not rely on *Whisper Soft*. The Company also urges that it would have prevailed in this case if the Board had adhered to the approach followed in *Master Slack.* These claims are belied by the record. As detailed above, the General Counsel did present the *Whisper Soft* theory to the ALJ, arguing that if an extension of sufficient duration were granted, "then [the Company] unlawfully withdrew recognition during the [extended] certification year notwithstanding whether the factors in *Master Slack* have been met." J.A. 203. Furthermore, the ALJ applied *Master Slack* and ruled against the Company. *See* J.A. 227-29. Regardless, the main point here is that we need not decide the merits of this case under the *Master Slack* theory.

The Company was neither surprised nor disadvantaged in defending itself with respect to the alternative theories of liability raised by the General Counsel. And the Board acted within its authority in choosing which of the alternative theories to apply in determining how best to redress the unfair labor practices committed by the Company. The Board's reliance on *Whisper Soft* certainly did not cause manifest injustice or violate any due process rights of the Company.

There is thus no basis for the Company's challenge to the Board's remedial order here, and no support for its claim that

it lacked notice in violation of due process. The Board acknowledges that it could have alternatively (or additionally) considered whether the Union's loss of majority status was caused by the Company's unfair labor practices per *Master Slack*, but that it was not required to do so. J.A. 277-78. And it is noteworthy that even though dissenting Board Member Ring disagreed with the part of the Board's order granting retrospective relief from decertification without a *Master Slack* showing, he recognized that proof of taint under *Master Slack* is not necessarily available in all circumstances in which an employer has unlawfully impaired the benefits of the certification year. On this point, the dissent tellingly observes that: "[p]roof of causation under *Master Slack* requires that unit employees are aware of their employer's unfair labor practices, and employees typically may not know what is going on in collective bargaining. As a result, the General Counsel may find it difficult to prove that the unfair labor practices caused employees to abandon the union, and the withdrawal of recognition will be lawful [if reviewed only under *Master Slack*] . . . even if the employer, by its unlawful bargaining conduct, has deprived the union of the 12 full months of good-faith bargaining to which the certification-year doctrine entitles it." *Board Decision*, at 15 n.28 (Ring dissent). This fortifies the point that the approaches followed in *Whisper Soft* and *Master Slack* may be more or less appropriate depending on the circumstances before the Board. And it is for the Board to decide, within its broad discretion, which remedial approach to follow.

The essential point here is that the Board has indicated no intention to walk away from its well-established precedent. It is settled Board law that if an employer deprives the union of one full year of good-faith bargaining, the Board may remedy the inequity by extending the certification year. *See, e.g.*, *Veritas Health*, 895 F.3d at 80. An employer is on notice that

if it refuses to bargain with the union during that year, it does so at its own peril. In future cases, it would be useful for the Board to explain why it chooses to apply the *Master Slack* theory when it could apply *Whisper Soft*/*New Madrid*. Nevertheless, the Board's choice to base its decision on one valid theory presented, as opposed to another, falls squarely within its lawful discretion.

### D. Six-Month Extension of the Certification Year and Affirmative Bargaining Order

To remedy the unfair labor practice violations, the Board, *inter alia*, extended the certification year by six months and imposed an affirmative bargaining order that required the Company to bargain with the Union for those six months, 40 hours per month, for at least eight hours per session. *Board Decision*, at 9. The Company argues the Board's reasoning is conclusory and fails to take account of the employees' disaffection with the Union. Final Br. of Petitioner 42. We find no merit in this argument.

Section 10(c) of the Act gives the Board authority to order a violator "to take such affirmative action . . . as will effectuate the policies" of the Act. 29 U.S.C. § 160(c). This court has held that "the Board's remedial authority is 'a broad discretionary one, subject to limited judicial review,' and a remedy 'will not be disturbed unless it can be shown that the order is a patent attempt to achieve ends other than those which can fairly be said to effectuate the policies of the Act.'" *United Food & Com. Workers Union Local 204 v. NLRB*, 447 F.3d 821, 827 (D.C. Cir. 2006) (quoting *Fibreboard Paper Prods. Corp. v. NLRB*, 379 U.S. 203, 216 (1964)). Nevertheless, "an affirmative bargaining order is an extreme remedy." *Vincent Indus. Plastics, Inc. v. NLRB*, 209 F.3d 727, 738 (D.C. Cir. 2000). To justify its imposition, the Board must explicitly balance three

considerations: "(1) the employees' § 7 rights; (2) whether other purposes of the Act override the rights of employees to choose their bargaining representatives; and (3) whether alternative remedies are adequate to remedy the violations of the Act." *Id.*

The Board acted squarely within its broad discretion in extending the certification year by six months and ordering the parties to bargain. As the Board noted, "the extension of the certification year is a standard remedy where, as here, an employer has refused to bargain for a significant part of the certification year." *Board Decision*, at 6 (citing *Veritas Health*, 895 F.3d at 80 and *Loc. Union No. 2338*, 499 F.2d at 544). The Board explained that the six-month extension vindicates the rights of employees "who were denied the benefits of collective bargaining during the initial certification year." *Id.* at 7. The Board further reasoned that the six-month extension did not unduly prejudice employees opposed to Union representation, as "the duration of the order is no longer than is reasonably necessary to remedy the ill effects of the bargaining violations" and simply "restore[s] the status quo ante." *Id.* Observing that the Company's unlawful conduct will be rewarded absent a six-month extension and accompanying affirmative-bargaining order, the Board reasonably concluded that the imposed remedy eliminates incentive to delay bargaining, whereas a cease-and-desist order alone would not provide the Union with "the same protection it should have rightfully enjoyed during its first year following certification." *Id.* at 8. Since we find that the Board acted within its broad remedial discretion, we decline to disturb the Board's remedial order.

### III. CONCLUSION

For the reasons set forth above, we deny the Company's petition for review and grant the Board's cross-application for enforcement of its order.

*So ordered.*