# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued May 15, 2025

Decided July 22, 2025

No. 24-5152

ARIANA CORTES AND KARAM LOGAN,
APPELLANTS

v.

NATIONAL LABOR RELATIONS BOARD,
APPELLEE

Consolidated with 24-5166

Appeals from the United States District Court
for the District of Columbia
(No. 1:23-cv-02954)

*Aaron Solem* argued the cause for appellants/cross-appellees. With him on the briefs was *Glenn M. Taubman*.

*Padraic J. Lehane*, Trial Attorney, National Labor Relations Board, argued the cause for appellee/cross-appellant. With him on the briefs were *Jennifer A. Abruzzo*, General Counsel, at the time the brief was filed, *William B. Cowen*, Acting General Counsel, *Nancy E. Kessler Platt*, Associate General Counsel, *Dawn L. Goldstein*, Deputy Associate General Counsel, *Kevin P. Flanagan*, Deputy Assistant

General Counsel, *Christine Flack* and *Michael S. Dale*, Supervisory Attorneys, and *Marianne L. Bowers* and *Craig Ewasiuk*, Trial Attorneys. *Phillip H. Melton*, Attorney, entered an appearance.

Before: SRINIVASAN, *Chief Judge*, MILLETT and GARCIA, *Circuit Judges*.

Opinion for the court filed by *Circuit Judge* MILLETT.

MILLETT, *Circuit Judge*:  Plaintiffs Ariana Cortes and Logan Karam filed a lawsuit in district court seeking to declare the statutory tenure protections for members of the National Labor Relations Board unconstitutional.  They now appeal the district court's order dismissing their case for lack of jurisdiction.  We hold that the parties are no longer sufficiently adverse to support Article III jurisdiction.  Accordingly, we affirm the district court's judgment dismissing this case for lack of jurisdiction.

**I**

**A**

The National Labor Relations Board commonly adjudicates unfair labor practice disputes between employers on the one hand and employees or labor unions on the other. 29 U.S.C. § 153(a).  The Board is made up of five members who are "appointed by the President by and with the advice and consent of the Senate" to serve staggered five-year terms. *Id*.  The President may remove a Board member "for neglect of duty or malfeasance in office, but for no other cause." *Id.*

3

**B**

Plaintiffs Ariana Cortes and Logan Karam are baristas employed at Starbucks stores in Buffalo, New York, and Depew, New York, respectively. App. 26 (Am. Compl. ¶¶ 10, 11). In the Spring of 2022, the National Labor Relations Board certified Workers United ("Union") as the exclusive representative of employees at the stores in which Ms. Cortes and Mr. Karam work. App. 27, 31 (Am. Compl. ¶¶ 14, 31).

Once the Board certifies a union as the representative of a particular bargaining unit, the law generally entitles that union to a conclusive presumption of majority support for the year following certification. *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 37 (1987); *see also* 29 U.S.C. § 159(c)(3) ("No election shall be directed in any bargaining unit or any subdivision within which in the preceding twelve-month period, a valid election shall have been held.").

After that first year elapsed, Ms. Cortes filed a decertification petition with the NLRB regional director requesting a new election in her store to determine whether a majority of the employees wished to continue being represented by the Union. App. 28 (Am. Compl. ¶ 19) (citing *Starbucks Corporation*, Case No. 03-RD-316974). On October 18, 2023, Mr. Karam filed a similar decertification petition. App. 32 (Am. Compl. ¶ 33) (citing *Starbucks Corporation*, Case No. 03-RD-328126).

At the time that Ms. Cortes and Mr. Karam filed their decertification petitions, the Union had already filed a number of unfair labor practice proceedings against Starbucks. App. 28–30, 32 (Am. Compl. ¶¶ 21–23, 34). The Board generally does not rule on a decertification petition when it has an unfair labor practice proceeding pending against the employer as

long as the regional director "has found merit in an unfair labor practice charge involving misconduct that would irrevocably taint the petition and any related election." *Rieth-Riley Construction Co.*, 371 NLRB No. 109, slip op. at 1 (2022); NLRB Casehandling Manual (Part Two) Representation Proceedings §§ 11730.3(b), 11733.1(a), https://perma.cc/E9HS-NJB6. That is because the "standard remedy" in an unfair labor practice proceeding is an extension of the union's one-year presumptive majority support status. *See J.G. Kern Enters. v. NLRB*, 94 F.4th 18, 23 (D.C. Cir.), *cert. denied*, 145 S. Ct. 380 (2024). For that reason, the NLRB regional director dismissed Ms. Cortes' and Mr. Karam's petitions subject to reinstatement after final disposition in the pending unfair labor practice proceedings. *See* NLRB Region 3 Decision and Order, 03-RD-316974 (May 25, 2023); NLRB Region 3 Decision and Order, 03-RD-328126 (Nov. 28, 2023).

Ms. Cortes and Mr. Karam each sought review by the Board of the regional director's dismissal orders. App. 31 (Am. Compl. ¶ 26); App. 138. The Board denied their requests for review, holding instead that their petitions were subject to reinstatement, if appropriate, after final disposition of the pending unfair labor practice proceedings against Starbucks. App. 31 (Am. Compl. ¶ 27); App. 198. In line with its standard practice, the Board made Ms. Cortes and Mr. Karam parties in interest to the pending unfair labor practice charges so that they would be notified of the final outcome of those cases. *Starbucks Corp.*, 372 NLRB No. 156 (Nov. 15, 2023); *Starbucks Corp.*, 03-RD-328126 at 1 (March 12, 2024); *see* National Labor Relations Casehandling Manual (Part One) Unfair Labor Practice Proceedings, § 11733.2(b), https://perma.cc/PYF2-AUQ7.

5

**C**

After Ms. Cortes and Mr. Karam filed their petitions for decertification, they filed this lawsuit in the United States District Court for the District of Columbia. The complaint challenges the constitutionality of the statutory tenure protections for members of the Board, 29 U.S.C. § 153(a), on the basis that they place an impermissible limitation on the President's "executive Power" and charge to "take Care that the Laws be faithfully executed," U.S. CONST. Art. II, §§ 1, 3. Ms. Cortes and Mr. Karam sought an injunction preventing the Board from acting on their petitions for decertification until the resolution of the lawsuit.

The Board moved to dismiss the lawsuit on the grounds that the tenure protections are constitutional and that, even if they are not, Ms. Cortes and Mr. Karam are not entitled to relief because they were required to allege "compensable harm," but had failed to do so. App. 131 (citing *Collins v. Yellen*, 594 U.S. 220, 259 (2021)).

The district court granted the Board's motion to dismiss on two grounds. *See Cortes v. NLRB*, No. 23-CV-2954, 2024 WL 1555877 (D.D.C. Apr. 10, 2024). First, the district court concluded that Ms. Cortes and Mr. Karam each lacked standing because, by the time the district court entered its judgment, the Board had dismissed their petitions, and they had not yet sought reinstatement of their decertification petitions. For that reason, the district court concluded that Ms. Cortes and Mr. Karam failed to establish an actual or imminent injury. *Id.* at *4. Second, the district court agreed with the Board that Ms. Cortes and Mr. Karam were required to allege compensable harm and that they had failed to do so. *Id.* at *6.

**II**

On review before this court, the parties have shifted their positions.  Ms. Cortes and Mr. Karam have abandoned their claims for injunctive relief and ask this court only to declare that the Board members' tenure protections violate Article II of the Constitution.  *See* Plaintiffs' Reply Br. 8; Oral Argument Tr. 14:19–15:11.  In addition, on April 1, 2025, the Board notified this court that, "consistent with the position of the Acting Solicitor General," it was "no longer relying on its previous argument that the statutory tenure protections for Board members are constitutional."  Board Notice of Position Modification at 1.  Therefore, the sole remedy Ms. Cortes and Mr. Karam seek against the government is a judicial statement of law with which the government fully agrees and has already advanced in this very case.

Article III of the Constitution limits this court to the adjudication of "[c]ases" and "[c]ontroversies." U.S. CONST. Art. III § 2.  In that way, "Article III denies federal courts the power 'to decide questions that cannot affect the rights of litigants in the case before them,' and confines them to resolving 'real and substantial controversies admitting of specific relief through a decree of a conclusive character[.]'" *Lewis v. Continental Bank Corp.*, 494 U.S. 472, 477 (1990) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)) (citation omitted).

The Declaratory Judgment Act, 28 U.S.C. § 2201, "alone does not provide a court with jurisdiction." *California v. Texas*, 593 U.S. 659, 672 (2021); *see also Skelly Oil Co. v. Phillips Petroleum Co.*, 339 U.S. 667, 671–672 (1950).  Rather, declaratory judgment actions must satisfy Article III's case-or-controversy requirement "just like suits for every other type of remedy[.]" *California*, 593 U.S. at 672; *see also*

*MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–127 (2007); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–241 (1937) ("The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests."). The requirement that there be a live case or controversy "subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis*, 494 U.S. at 477.

To establish a case or controversy, the parties must have adverse interests, meaning that a judgment benefiting the plaintiff's concrete interests must adversely affect a concrete interest of the defendant. For example, in *United States v. Windsor*, 570 U.S. 744 (2013), although the parties agreed that the statute at issue was unconstitutional, the parties remained adverse because Windsor sought not only a declaration of unconstitutionality, but also a federal tax refund that the government continued to refuse to pay, *id.* at 758. Because an order directing the government to issue the refund would cause the government a "real and immediate economic injury" and would require the government to take an action it would not "but for the court's order," a justiciable dispute between the parties remained. *Id*. (internal citation omitted). As a result, the government, in seeking Supreme Court review, "retain[ed] a stake sufficient to support Article III jurisdiction[.]" *Id.* at 757. The fact that the government "may [have] welcome[d]" a lower court order requiring it to pay the tax refund if that order were "accompanied by the constitutional ruling it want[ed] [did] not eliminate the injury to the national Treasury if payment is made, or to the taxpayer if it is not." *Id.* at 758.

Similarly, in *Seila Law LLC v. Consumer Financial Protection Bureau*, 591 U.S. 197 (2020), the parties agreed that the statutory tenure protections for the director of the Consumer Financial Protection Bureau were unconstitutional.

But constitutional adversity remained because the Bureau continued to enforce a civil investigative demand against Seila Law on the theory that the tenure protections were severable from the rest of the statute. *Id.* at 212–213. As a result, the court's ruling would have "'real meaning' for the parties." *Id.* at 213 (quoting *INS v. Chadha*, 462 U.S. 919, 939 (1983)). "[R]eal-world consequences for the Government and its adversary" resulting from a court order "suffice[] to support Article III jurisdiction—even if 'the Executive may welcome' an adverse order that 'is accompanied by the constitutional ruling it wants.'" *Id.* at 212 (quoting *Windsor*, 570 U.S. at 758).

In sum, to have a case or controversy, the parties must seek adverse forms of relief from the court such that the court's judgment will "require [the defendant] to act," *NLRB v. Constellium Rolled Prods. Ravenswood, LLC*, 43 F.4th 395, 404 (4th Cir. 2022), in a way that will adversely affect its own interests and, in that way, have "real meaning for the parties," *Seila Law*, 591 U.S. at 213 (internal citation omitted). *Cf. Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("The real value of the judicial pronouncement—what makes it a proper judicial resolution of a 'case or controversy' rather than an advisory opinion—is in the settling of some dispute *which affects the behavior of the defendant towards the plaintiff*.").

That type of adversity is missing here. Ms. Cortes, Mr. Karam, and the government now fully agree that the Board members' removal protections are unconstitutional. Ms. Cortes and Mr. Karam do not seek to enjoin the Board from acting, nor do they seek a declaration that the Board itself is unconstitutional. *Cf. Free Enter. Fund v. Public Co. Acct. Oversight Bd.*, 561 U.S. 477, 487 (2010) (seeking "a declaratory judgment that the Board is unconstitutional and an injunction preventing the Board from exercising its powers").

They have not asked this court to order the government to confer a benefit on them or to enjoin any governmental action affecting them. They seek only to have a court say what the government has already said—the Board's tenure protections are unconstitutional. In other words, Ms. Cortes and Mr. Karam have not sought any relief from this court that the government has refused to provide. Awarding Ms. Cortes and Mr. Karam the declaratory judgment they seek would have no "real-world consequences" or "real meaning for the parties." *Seila Law*, 591 U.S. at 212–213 (internal citation omitted).

To be sure, the parties disagree about whether the Supreme Court's decision in *Collins* requires Ms. Cortes and Mr. Karam first to establish "compensable harm" to be eligible for the declaratory judgment they seek. *Compare* Plaintiffs' Opening Br. 53–60, *with* Gov't Br. 24–42. But the issue of Plaintiffs' *eligibility* for relief does not itself create adversity when, as here, answering that question would not affect any concrete interest of either party. For even were this court to find that Ms. Cortes and Mr. Karam *are* eligible for a declaratory judgment in this case, the government would suffer no "real-world consequences" that flow from that determination. *Seila Law*, 591 U.S. at 212. Granting the declaratory judgment requested in the complaint would lead only to a judicial declaration of law with which the government, Ms. Cortes, and Mr. Karam fully and mutually agree.

At the same time, a decision ruling that Ms. Cortes and Mr. Karam *are not* eligible for a declaratory judgment under *Collins* would not affect any concrete interest of theirs because the government does not seek to do anything adverse to them or to withhold any action they desire. Under Article III, the parties must have something beyond a debate of law to win or lose. Said another way, the question for Article III

adverseness is not whether the parties agree on every sub-issue in the case, but whether the resolution of any of those issues would create a judgment that adversely affects one party's concrete interests and benefits the other's. Here, the declaratory judgment that Ms. Cortes and Mr. Karam seek would not adversely affect any concrete interest of the government, and, in fact, the government is in full agreement with the content of any such judgment.

## III

For the foregoing reasons, we affirm the district court's judgment dismissing the case for lack of Article III jurisdiction.

*So ordered.*